(No. 88-CC-1231—

ALLEN N. ONDES, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 29, 1991.*

WILLIAM J. BILLEAUD, for Claimant.

ROLAND W. BURRIS, Attorney General (JOHN GILBERT, Assistant Attorney General, of counsel), for Respondent.

## OPINION

MONTANA, C.J.

This is a claim for personal injuries brought pursuant to section 8(d) of the Court of Claims Act. (Ill.

Rev. Stat., ch. 37, par. 439.8.) Claimant alleges that he was injured as a result of Respondent's negligent failure to warn of a "defect or weakness in a T-bar light fixture located in the Bubble Gym of the S.I.U. Edwardsville campus." On December 16, 1986, said T-bar light fixture broke and fell upon Claimant when Claimant attempted to "stretch" himself by hanging from the apparatus.

The facts surrounding this accident are not seriously in dispute. The Claimant, Allen Ondes, was, at the date of the accident, a student at Southern Illinois University—Edwardsville (hereinafter SIU—E). As a student, Claimant was entitled to use an athletic facility commonly known as the "Bubble Gym." The bubble gym was a large structure (enclosing at least two basketball courts) made mostly of fabric, and supported, or held up, by air.

The inside of the bubble gym was illuminated by lights affixed to "T-bars." These T-bars were, in turn, affixed to aluminum poles which were secured to the ground via concrete boxes. Several of these light fixtures were placed on each side of the gymnasium. Testimony indicated the light fixture which injured Mr. Ondes was anywhere between 8½ to 9½ feet tall, with the vertical pole being from 3½ to 4 inches in diameter. It is also undisputed that the light fixture was at least partially covered with a rubber protective coating and was a "massive-looking" structure.

On the date of the accident, Mr. Ondes entered the bubble gym, as he often did during his 3½ years at SIU—E, to play a "pick-up" game of basketball. Claimant testified that he always stretched before playing and that on the date in question he decided to "dead hang" (for the first time) from one of the light fixtures and thereby stretch his upper body. When asked whether he had ever

observed others stretch in a similar fashion from these light poles, Claimant testified that he had seen it done approximately a dozen times. Claimant did not in any way test the light pole to see if it would hold his weight. After jumping and grabbing the T-bar cross piece, the vertical pole broke near its base, whereupon Mr. Ondes landed on his back and the crossbar fell on his face. Suffice to say, Mr. Ondes received severe injuries to his teeth and mouth regions and (although disputed), an injury to the middle part of his spine.

Evidence was also received as to the propensity of these light poles to break. Counsel for the Claimant introduced testimony of a Mr. Hann, who, just two weeks before the Ondes incident, was injured when a light pole broke (again, near the base) while he was attempting to stretch out in the same manner as Mr. Ondes. Additionally, a Mr. Ufert, supervisor of SIU—E's Electrical Department, and a Mr. Menoni, supervisor of SIU—E's Crafts Department, testified that on approximately six other occasions these light fixtures had to be repaired due to breaks near the base. At no time prior to Claimant's accident was he told of the propensity of these light poles to break or warned not to stretch or hang from the horizontal cross-bar.

In order for Claimant to state a cause of action for negligence, he must allege facts establishing the existence of a duty, a breach of that duty, and an injury which proximately resulted from the breach.

Whether a legal duty exists is a question of law which is determined by the Court. Factors which are relevant to the existence of a legal duty include whether the injury was reasonably foreseeable, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon

defendant. *Ward v. K-Mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223.

When dealing with the liability of possessors of land as to invitees and licensees, Illinois now generally follows Sections 343 and 343A of the Restatement (2d) of Torts with respect to both invitees and licensees (after having been modified somewhat by the Premises Liability Act (Ill. Rev. Stat., ch. 80, sec. 301, *et seq.*)). See *Ward* at 227.

Section 304 of the Illinois Premises Liability Act reads as follows:

"The distinction under the common law between invitees and licensees as to the duty owed by an owner or occupier of any premises to such entrants is abolished. The duty owed to such entrants is that of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them."

Section 343 and 343A of the Restatement (2d) of Torts states at 343:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger."

At 343A, "(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. (2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance that the harm should be anticipated."

Respondent in its brief argues that it never held the light fixtures out to be anything other than for lighting purposes. This, however, is clearly contradicted by the evidence. There is testimony to the effect that the Respondent, on occasion, used the light fixtures to hold

volleyball nets. Additionally, there is testimony that the light fixtures did, indeed, look like chin up bars. When taking the above into account, coupled with the testimony by Mr. Ondes and Mr. Hann that people often hung or stretched from the lights (indeed, Mr. Hann testified that he even saw a person sitting on top of one of the light poles), it becomes apparent that the light poles could be and were used for other purposes and that Respondent at least acquiesced in these cases.

When dealing with the issue of notice, both as to the possibility that people were hanging from the light poles and that the poles might have a defect or propensity to break, the Claimant must prevail. First, Respondent's employees had to fix light poles on at least seven different occasions prior to Mr. Ondes' accident. All seven light poles were broken at or near the same place, the base. Secondly, there was an investigation conducted with respect to Mr. Hann's accident. If Mr. Hann's accident did not put the Respondent on actual notice of the poles' breaking propensity and/or the possibility of other uses, it definitely put it on constructive notice. Lastly, it seems somewhat odd that the employees of Respondent, whose charge it was to care for the bubble gym facility on a daily basis, were unaware of the tendency of people to stretch or hang from the light poles, especially when two students who were not at the facility on a daily basis testified that they often saw such happenings going on.

Another argument that Respondent raises is to the effect that it cannot be expected to guard against harm from events which are not reasonably to be anticipated or are so unlikely to occur that the risk, although

recognizable, would be commonly disregarded (see *Beal v. Kuptchian* (1987), 164 Ill. App. 3d 191, 517 N.E.2d 712). Although the above is true, in the case at bar it would be unreasonable of Respondent not to guard against such a danger. To start with, the light poles' propensities were not open and obvious. These propensities are not something that a student coming in to play basketball could easily detect. It has been established that the area most likely to break (e.g. the base of the pole) was covered with a rubber protective coating. There was also testimony that the light fixtures looked "massive." Additionally, as stated above, Respondent had at least constructive knowledge that the poles would break under pressure and that people were on occasion hanging from them.

As the propensities of these poles are not risks that would be (or should be) commonly disregarded, Respondent breached its duty by not having taken preventive measures. Respondent counters by pointing out that the State of Illinois is not an insurer of the safety of persons and that it has met its standard of care of reasonableness. In this case, however, reasonableness would have required some notice or warning be given or posted. Such a notice would not have elevated the State of Illinois to a general insurer. At most, any burden placed upon the Respondent would have amounted to the posting of a simple warning on each light fixture. To say the least, such a posting would not have placed much of a burden on Respondent.

To conclude, this Court finds Respondent had a duty to warn, breached that duty, and the injury was the proximate result of that breach.

Respondent next argues that even if it is negligent Claimant's negligence amounts to more than 50% of the combined negligence of the parties, thereby barring the Claimant from a recovery, pursuant to Chapter 110,

Section 2—1116 of the Illinois Revised Statutes. Although it is agreed that Claimant is contributorily negligent, he is not more than 40% negligent. As Respondent pointed out in its brief, Claimant did fail to test in any way the ability of the light fixture to hold his weight. Additionally, Claimant had some training as a machinist prior to the accident, which should have alerted him to the possibility that the pole might break. These facts, although clearly making Claimant contributorily negligent, do not, however, add up to the 50% figure as Respondent urges. As will be shown later, Claimant's award should be reduced accordingly.

Lastly, Respondent argues that Claimant is not entitled to any damages with respect to an alleged back injury. Respondent based this argument on the testimony of a Dr. Frederick. Dr. Frederick basically stated that, upon his examination of Claimant, he was unable to find any residuals of a neck or back injury. Additionally, Respondent points out that if Claimant did receive an injury to his back a portion of those damages should be attributable to a subsequent car accident in which Claimant was involved.

Although Dr. Frederick is a recognized expert in his field, his examination did occur some 2½ years after Claimant's injury. In addition, the examination was at the request of, and paid for by, the Respondent. Because Claimant's doctor's examination was closer in time to the accident, and because the injury may have healed to the point where it escaped Dr. Frederick's eye, Claimant is found to prevail on this issue.

As far as the subsequent car accident is concerned, Claimant has not asked for any special damages which may have been incurred after the date of the said accident.

As stated above, Claimant has received severe and permanent injuries to his teeth and mouth regions. Some of the injuries and treatments include the loss of 4 front teeth, soft tissue trauma, severe injury to several other teeth (which later required root canals), the stabilization of various teeth, and the placement of an eight-tooth bridge. The total special damages incurred as a result of the mouth/teeth injury amount to $7,286.34. Evidence was also received as to future expenses with regard to the above injury; said future dental expenses total $3,960.00. As far as the neck/back injury is concerned, Claimant prays for $1,520.00 in special damages.

The Court finds that the total value of this claim is $30,000.00. This should be reduced by 30%, the proportion of fault which we attribute to the Claimant.

Wherefore, it is hereby ordered that the Claimant be, and hereby is, awarded the sum of $21,000.00.