(No. 88-CC-1298-

LINDA M. OLESON, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 12, 1994.*

TALBERT & MALLON (LANCE R. MALLON, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (DAVID BO MATTSON, Assistant Attorney General, of counsel), for Respondent.

## OPINION

PATCHETT, J.

This claim arises out of a slip and fall which occurred on April 7, 1987, at the Pere Marquette State Park. Mrs. Oleson, accompanied by her husband and son, were at the park at approximately 6:00 to 6:30 p.m. They stopped at a scenic overlook to dispose of trash. The Claimant's car pulled along side the trash can, leaving a space of four feet to open the door. When she stepped out of the car towards the trash can, Mrs. Oleson's right foot slipped and caught on a pile of debris. The debris was described as chunks of asphalt or rocks, ranging in size from 12 inches to small pebbles. Mrs. Oleson twisted her ankle and right arm from her elbow to her shoulder. After the fall, she looked where she had fallen and saw chunks of debris in a pile about three feet by one foot wide.

Prior to exiting the vehicle, Mrs. Oleson had noticed the difference in level between the road and shoulder. The road had a jagged area between it and the gravel shoulder. This was not the area where Mrs. Oleson fell. She states that she never saw the pile of chunks on her many previous visits, but she had noticed on prior visits that the edge of the road had become jagged. Mrs. Oleson did not report the accident to the park but left to go to the hospital. It was still light outside at the time of the accident, and it should be noted that Mrs. Oleson was wearing Nurse-Mate rubber-soled shoes at the time of the fall.

Mrs. Oleson went directly to the Alton Memorial Hospital. She returned the next morning and was examined by Dr. Michael Taylor. An arthrogram was performed on the Claimant and fluid was removed from her shoulder. She received a shoulder immobilizer. The diagnosis

was a contusion injury and sprain to the right shoulder capsule with subsequent development of inflammation.

The doctor ordered physical therapy. His opinion was that the injury was causally connected to the fall of April 7, 1987, in the park. The doctor treated her up until July 1987 and once in 1991 when she received a cortisone injection. He also saw her once in 1992. When he released her in May 1987, he recommended follow-up visits. She did not follow up with the doctor because she received free care from the doctor for whom she subsequently became employed. Her employer prescribed an anti-inflammatory medication which she takes on a daily basis.

Mrs. Oleson missed six weeks of work immediately following the accident. She claims to continue to have pain in her right arm, limiting her activities. She attended a class at Lewis & Clark Community College for pain management.

Claimant's special damages are specified as follows:

| | |
|---|---|
| Alton Memorial Hospital | $106.86 |
| Alton Memorial Hospital | 228.87 |
| Alton Physical Therapy | 326.00 |
| Alton Medical Imaging Consultants | 15.00 |
| Dr. Michael Taylor | 483.00 |
| Total medical damages | $1,239.73 |
| Lost wages from 4/8/87 through 5/25/87 | $1,200.00 |

Richard Brown, a former park superintendent, testified that the roadway at the overlook was jagged as a result of wear and tear. He also testified that there were no warnings posted about the jagged roadway or resulting debris. Mr. Brown had received complaints about road conditions along the overlooks prior to 1987, and he had

received complaints about the overlook in question in April 1987. The staff at the park would patch the potholes when they could, but complete re-pavement or shoulder work was the responsibility of the Capital Development Board. The park superintendent testified that he requested that the Capital Development Board repair the roads and overlooks prior to 1987, but the request was denied.

Mr. Richard Niemeyer, the current park superintendent, testified that he was aware of the jagged area along the roads and overlooks, but had not noticed the broken-off fragments. His testimony in other respects was basically consistent with that of Mr. Brown.

To prevail on her claim, Mrs. Oleson was required to prove by a preponderance of the evidence that the State had the duty to maintain the area in question, that the State breached the duty, and that such breach was the proximate cause of her injury. (*Dellorto v. State* (1979), 32 Ill. Ct. Cl. 435; *Preikschat v. State* (1985), 37 Ill. Ct. Cl. 29; *Calvert v. State* (1985), 38 Ill. Ct. Cl. 104.) The State is entitled to notice of the existence of danger or hazards posed to the public and a sufficient period of time to cure such problems. *Merkel v. State* (1949), 19 Ill. Ct. Cl. 106.

We hereby hold that the State had sufficient notice in the present case. Complaints had been made about the overlook in question in April 1987. The superintendent had requested assistance from the Capital Development Board, but that assistance had been denied. We find that the State breached its duty by allowing the roadway and overlook to deteriorate, thereby causing a hazard to individuals using the park. The State even anticipated that the particular area in question would be used by people, as evidenced by placing a trash can at the site of the overlook.

In addition, the State failed to post any warning as to the danger of crumbling asphalt and debris. The State has a duty to warn visitors against conditions in the park that might endanger pedestrians. *Dumermuth v. State* (1966), 25 Ill. Ct. Cl. 353.

Despite this, we find that the Claimant had some degree of comparative fault. Reasonable people should always look where they are placing their feet when walking. Therefore, we assign the Claimant 25% comparative fault. We set the total damages of a sum of $10,000, and after deducting 25% comparative fault, we award the Claimant $7,500.