(No. 84-CC-0270—▮▮▮▮▮

MEL DUNCAN, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 14, 1995.*

MURPHY, PETERS, & DAVIS (THOMAS PETERS, of counsel), for Claimant.

JIM RYAN, Attorney General (BRIAN FARLEY, Assistant Attorney General, of counsel), for Respondent.

## OPINION

SOMMER, C.J.

On July 5, 1982, the Claimant, Mel Duncan, along with his daughter, Gayle Duncan, other relatives, neighbors, and friends went to Starved Rock State Park. They paid no admission fee. While at Starved Rock State Park, Gayle Duncan drowned in the Illinois River which borders the park for 4½ miles. Gayle was 25 years old at the time, and was gainfully employed.

The Claimant has filed this wrongful death claim arising from his daughter's drowning. In this claim, the complaint alleges that the Respondent was negligent for failing to warn of dangerous currents in the river; for failing to adequately supervise the park; for failing to make available adequate life saving equipment and personnel; and for unreasonably allowing an attractive nuisance to continue to exist without taking steps to prevent swimming in the park.

At the time of the drowning, Gayle Duncan was in the Illinois River off of Lover's Leap Cove along with a number of other people from her group. Gayle was sitting on a rock and was fully clothed. She decided to get off the rock, but the water was deeper than she anticipated; and she was pulled into the river by the current. Gayle could not swim. Immediate attempts to rescue her were made by those nearby; and some park employees tried to revive her, but she died of drowning. Park employees did rescue two other persons who had gone to Gayle's aid and were swept into the river by the strong currents and undertows.

Contrary to the assertions of the Respondent, the Recreational Use of Land and Waters Act (45 ILCS 65/1 *et seq.*, formerly Ill. Rev. Stat., Ch. 70, par. 31), was not applicable to the Starved Rock State Park in 1982. (*Miller v. United States* (1979), 597 F.2d 614 (7th Cir.); *Sherman v. State* (1994), 93-CC-2240.) The Standard to be applied would be one of negligence, not willful and wanton conduct. The Recreational Use of Land and Waters Act was amended in 1987. This amendment had the effect of changing the standard to willful and wanton conduct.

In order for the Claimant to recover against the State, he must prove by a preponderance of the evidence that the State owed the injured party a duty, and that duty was breached by a negligent act or omission, and that such negligence was the proximate cause of the injuries complained of. *McCoy v. State* (1975), 37 Ill. Ct. Cl. 182.

The State has a duty to maintain its premises in reasonably safe condition; and if it knows of any defects, it has a duty to take steps to bring such defects to the attention of the public. *Harder v. State* (1991), 44 Ill. Ct. Cl. 235, 237. *Walter v. State* (1989), 42 Ill. Ct. Cl. 1, 5.

In this claim, the State knew of the dangerous undertows in the Illinois River. The State erected six warning signs on trees along the 400 feet of the perimeter of Lover's Leap Cove. The majority of the signs were near the trail leading to the cove. The trail was necessary to use to get to the cove due to the surrounding high bluffs. The signs were metal, 18 by 18 inches, and had written on them: DANGEROUS UNDERTOW STAY CLEAR OF WATER. Other warnings against swimming in the river were in the park brochures, on the park maps posted on the grounds, and on other signs posted on the grounds. The State could not put signs in or near the river on the beach because the periodic rises and falls in

the river of 28 feet would cover or destroy the signs. Putting signs on the beach had been tried, but the signs had been destroyed by rising water.

It was suggested by the Claimant that the State fence off Lover's Leap Cove to prevent swimming. The State contended that to do so would destroy the beauty and naturalness of the park; and would be subject to the previously-cited rises and falls in the river; and would not prevent swimming in any event. In addition, the boundary along the river was 4½ miles. In order to be effective, the fence would have to cover the entire distance. To fence off such a distance would be a great burden and again would destroy the naturalness of the Park; while the rise and fall of the river would destroy the fence.

The State testified that there had been two drownings somewhat before the present incident, but they occurred under different circumstances. No one drowned by entering the water at the beach of Lover's Leap Cove.

Thus, we find that a reasonably alert person would have seen the warning signs; and that the warning signs were adequate and were the best the State could do in light of having to warn along a stretch of 4½ miles of river. The State is not required to take unduly burdensome steps to warn. For example, it would be unduly burdensome to require the State to station an employee at Lover's Leap Cove all day to warn persons away. Persons intent on swimming could enter the river elsewhere. The State cannot be expected to station employees along the whole 4½ mile stretch of river all day to prevent swimming. *Dunbar v. State* (1992), 45 Ill. Ct. Cl. 175, 179.

It is also noted that park employees were on hand by boat in time to rescue two of the swimmers caught in the current.

Therefore, we find that the State did not breach its duty to warn or maintain the premises in reasonably safe condition; and, therefore, is not liable to the Claimant for damages resulting from the drowning death of Gayle Duncan. Therefore, it is ordered that this claim is denied.