(No. 88-CC-4292—)

STEVEN SHANNESSY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 12, 1997.*
*Order filed December 26, 1997.*

COONEY & CONWAY, for Claimant.

JAMES E. RYAN, Attorney General (CARA LEFEVOUR SMITH, Assistant Attorney General, of counsel), for Respondent.

## OPINION

MITCHELL, J.

This cause comes before the Court on Claimant Steven Shannessy's complaint against Respondent State of Illinois seeking damages for personal injuries suffered on May 9, 1987, while operating a "trail" bicycle at Starved Rock State Park. The Claimant alleged that Respondent was negligent because it failed to properly warn of a dangerous condition or caused a path to be constructed too close to a cliff without constructing a fence or barrier. The bill of particulars, attached to the complaint, stated that medical expenses, disability and disfigurement, pain and suffering, and lost earnings totaled $1,000,000.

The hearing was conducted on August 1, 1996. Claimant presented three witnesses: Mr. Leo Trainer, an employee of Respondent; Mr. Stephen Shannessy, Claimant; and Mr. Francis Shannessy, father of Claimant. Claimant presented exhibits consisting of an itemized list of medical and health expenses incurred by, and projected for, Claimant; a trail map of Starved Rock Park; a

photograph of the parking lot at Starved Rock Park; and a copy of an advertisement of a trail bike. All exhibits were admitted into the record.

Respondent presented one witness, Mr. Richard Vecchi, an employee of the Respondent. Respondent presented five exhibits consisting of photographs of a certain trail area; and a departmental report including various reports. The exhibits were admitted into the record.

## Claimant's Case in Chief

### A. Testimony of Leo Trainer

Mr. Leo Trainer testified that he is employed by the State of Illinois and has worked at Starved Rock State Park (hereinafter the "Park") for 23 years. He has personal recall of an accident that occurred on March 28, 1987, in the vicinity of Hennepin Canyon. He received a telephone call from the volunteer fire department indicating that they were responding to a call at the canyon. He assisted in bringing the injured individual up the trail. The injured person was Mr. Shannessy, the Claimant. He remembers seeing a bicycle. He told one of Claimant's companions that this was the first bicycle accident he knew of on the trail. He told the person it was dangerous.

Mr. Trainer stated that, at some point in time after the incident, bicycles were rented from a private concession stand on Park property. He did not believe bicycles should be on any part of the trails because they were not designed for bicycles. The trails are dangerous for bicycles because they were designed for pedestrian use not for bicycle use. He identified the photographs marked as Respondent's Exhibit Nos. 1-4. The photographs show the signage as it existed at the trail on May 9, 1987, the date Claimant was injured. The signs do not prohibit bicycles.

Mr. Trainer identified Claimant's Exhibit No. 2, a trail map of the Park as it existed on May 9, 1987. The trail map states that there is no swimming, wading, rappelling or climbing and advises to stay on marked trails, but does not state anything about trails not being for bicycles. Claimant was injured at Illinois Canyon which is marked as "18" on Claimant's Exhibit No. 2. Respondent's photographs were taken near the letter "J" on the trail map.

On cross-examination, Mr. Trainer stated that a person would have to use a stairway of 104 steps to get up onto the bluff trail near Illinois Canyon. Respondent's Exhibit No. 3 is a photograph of a sign that states, "No camping, climbing or rappelling. People have been injured and killed in this area. Violators will be prosecuted to the maximum extent of the law."

B. Testimony of Claimant Stephen Shannessy

Mr. Stephen Shannessy testified that he is 31 years of age. On the morning of May 9, 1987, he was employed as a millwright carpenter and in good health. He was earning $8 per hour and working 40 to 45 hours a week.

On May 9, 1987, he was "mountain biking," an activity described as "off-road biking." He was riding a Schwinn High Sierra. The bike was intended for use on rugged trails and steep slopes.

On May 9, he and companions parked at the parking lot marked "J" on the trail map. He identified Claimant's Exhibit No. 3 as a photograph of the trail head.

He was at the Park once before. He had hit his head on that trip and does not remember anybody at the Park telling him the trails were dangerous for bicycles. On May 9, there was not any signage prohibiting bikes on

trails. They went from parking lot J to the stairway and climbed up to the bluff. When they got to the top of the bluff, they began rappelling.

After rappelling, they climbed back up and got on the bikes and went downhill on the trail. He came to a switchback and the back wheel slipped out. He fell into the creek bed and hit his head against a tree. The trail was about two feet wide, muddy, with lots of overgrowth and very short switchbacks. The trail was a foot and a half away from the edge of the bluff. The drop from the edge of the bluff to the bottom was between 30 and 35 feet. There were not any barriers between the trail and the drop-off. There was a slope away from the trail. There were not any signs at the trail indicating that it was dangerous for bicycles.

After he had fallen, he could not feel a thing. He went into shock. He remembers being on the Loyola helicopter. He remembers being at Northwestern Hospital. They put him in a neck brace and a striker frame. Eighteen days later he had surgery and then he went to the Rehabilitation Institute of Chicago for four months of rehabilitation. After the operation he experienced extreme pain. They taught him the activities of daily living and how to use a wheelchair.

He is not able to use his legs. He has limited use of his arms and hands. The middle fingers of both hands are completely paralyzed. He has about 70 percent control over his breathing and lungs. He needs assistance with dressing, eating and cleaning. He uses a Texas catheter and lay-bag for elimination of body fluid. He requires a mini-enema for bowel evacuation. An attendant lives with him. He pays her $300 per month. Every six or eight weeks he has urinary tract infections. He takes an antibiotic twice a day at $5 per pill. The infections are getting

worse. He is constantly at risk of having an autonomic reflex, where his bladder does not empty causing his blood pressure to drop and rise rapidly, leading to a possible stroke. He uses leg-backs, a shower tray, a wheelchair, and a catheter. He believes this equipment costs approximately a thousand dollars a month.

On cross-examination, Claimant stated that he did not see the sign at the front of the trail head that prohibited rappelling and warned that people have been injured and killed in that area. When riding his bike, he was aware that there was a drop-off at the side of the trail.

C. Testimony of Frank Shannessy

Mr. Frank Shannessy, the father of Claimant, testified that he and his family were called to the emergency room at the hospital when Claimant was injured. He went to the Park on May 26 and visited the site of the accident. He thought it was a dangerous site. The trail was very narrow with no barriers at the edge. Prior to becoming paralyzed as a result of the accident, Claimant was athletic.

Respondent's Case in Chief

A. Testimony of Richard Vecchi

Mr. Richard Vecchi, an employee of the Park, testified that he was a ranger in 1987. The Park has never charged admission during his 26 years as an employee. He responded to a call on May 9, 1987, because of Claimant's accident at Illinois Canyon. The trail is an average of three feet in width and is designed for hiking.

On cross-examination, Mr. Vecchio stated that after Claimant's first accident, on March 28, 1987, at Hennepin Canyon, the Park put up "no biking" signs, specifically, the international sign (the bicycle with the slash through

it) at Illinois Canyon. The sign is not in any of the photographs included in the departmental report, Respondent's Exhibit No. 5. The Civilian Conservation Corps built the trail in the 1930s. At the point Claimant fell, the trail is approximately four feet from the cliff. The trail is fairly level. He does not believe the trail is safe for bicycles. There are no signs prohibiting biking in the general area of the accident.

## Claimant's Argument

In Claimant's argument, the major premise is that the trails at the Park, which were owned and operated by Respondent, were dangerous for use by bicyclists and that, although Respondent had knowledge of this danger, it failed to warn against bicycling. In support of his argument that Respondent's failure to warn the public of the dangerous condition of the trails was the proximate cause of his fall, Claimant cites *Duncan v. State* (1995), 47 Ill. Ct. Cl. 51 and *Suhrbier v. State* (1994), 46 Ill. Ct. Cl. 102.

Claimant argues that the case at bar is similar to the facts in *Oleson v. State* (1994), 46 Ill. Ct. Cl. 252. In *Oleson*, the State was partially liable for injuries to a Claimant because it was aware of the deteriorating condition of a roadway and scenic overlook at a State park, but did not repair the hazard or warn visitors. In *Wilson v. State* (1989), 41 Ill. Ct. Cl. 50, the Court stated that the magnitude of the risk, the burden of requiring the State to guard against the risk, and the consequences of placing such a burden on the State are factors in determining whether a duty exists (or harm is foreseeable). (41 Ill. Ct. Cl. at 55.) In this case the risk is substantial, the burden is minimal and the consequences are limited to posting warnings at trails at this park; therefore, the State did owe a duty to warn the public that bicycling on the trails was dangerous. Claimant does not present an argument that

the test as stated in *Wilson* would result in a conclusion that the State should erect a fence or barriers.

## Respondent's Argument

The Respondent argued that the Claimant was the only person who could have prevented the accident. He took it upon himself to ride the bicycle along the top of the cliff. Respondent argued that when Claimant was at the Park on March 28, 1987, he also hurt himself. On May 9, Claimant's accident occurred when he was returning along the same terrain he had traveled to get to the rappelling site. He was aware of the dangerous switchback or turn where the accident occurred.

The Respondent argues that there is no evidence of a duty.

## CONCLUSION

The integral facts surrounding the accident that is the basis of this complaint are not in dispute. On May 9, 1987, Mr. Shannessy fell from his bicycle and struck his head while traveling along a trail at the Park near Illinois Canyon. He suffered serious and permanent injuries including full paralysis of his legs and partial paralysis of other portions of his body. Mr. Shannessy's life has not been, and never will be, the same because of the fall he took. Respondent has not disputed the extent of injuries or the dollar amount of damages claimed.

There are certain facts that may have some bearing on whether the Respondent had a duty to expressly warn Claimant that the trails were dangerous for bicycle use or to ensure that paths are not too close to cliffs without having a fence or barrier. The Respondent's trail maps had warnings about various activities but did not specifically warn about bicycle use. There was a sign posted that

prohibited certain activities, but not specifically bicycle use. The sign did state that, "people have been injured and killed in this area." Respondent's employees personally believed the trails to be dangerous for bicycle use. Prior to 1987, there is not any evidence of anyone riding a bicycle on the trails. This changed on March 28, 1987.

On March 28, 1987, Claimant was riding a bicycle on the trails at the Park and was injured. He was injured to the extent that he needed to be assisted by emergency medical personnel and did not remember details of the incident. This incident is a two-sided sword. Claimant refers to the incident to demonstrate that the Respondent knew that people were riding bicycles on the trails and that such activity was dangerous. The sword cuts the opposite direction when the fact is used against Claimant. On May 9, 1987, Claimant knew that riding a bicycle on trails at the Park was dangerous because he had actual notice of such danger. He was personally aware of accidents and injuries resulting from the activity. Claimant is not seeking damages arising from his March 28 incident. This claim is about the May 9 accident.

Mr. Vecchi testified that, after Claimant's March 28 incident, the Respondent posted signs prohibiting bicycle use on the trails. This statement also appears in the visitor accident report prepared by him in relation to the May 9 accident. (See departmental report, Respondent's Exhibit No. 5, p. 5.) Claimant argues that Respondent encouraged bicycle use in the Park; however, Mr. Trainer's testimony indicates that a concessionaire at the Park leased bicycles *subsequent* to May 9, and there is no evidence that the bicycles were intended for use, or actually used, on the trails.

In order for Claimant to recover against the State, he must prove by a preponderance of the evidence that the State owed him a duty, the duty was breached by a

negligent act or omission, and that such negligence was the proximate cause of his injuries. (*Ondes v. State* (1991), 43 Ill. Ct. Cl. 272.) A landowner generally has a duty to use reasonable care to keep his premises safe for invitees, but that duty does not include a duty to warn invitees of obvious dangers or risks. (*Ma on behalf of Ma v. State* (1993), 45 Ill. Ct. Cl. 180.) In this case, the Claimant has failed to sustain his burden of proof. Claimant has not shown that the State's duty of reasonable care included a duty to warn against an obvious risk of riding a bicycle on a narrow hiking trail atop a cliff which is not intended for bicycling.

In the instant case, though the signage did not prohibit bicycling, it did state that:

"No camping, climbing or rappelling. People have been injured and killed in this area. Violators will be prosecuted to the maximum extent of the law."

This, along with the fact that the Claimant, by his own testimony, was aware of the drop-off on said trail, indicates that the trail was obviously designed for hiking, since the Claimant was required to carry his bicycle up 104 steps in order to get to the hiking trail. The danger was obvious to his father who testified that "it was so dangerous that I was crawling on my hands and knees."

Where a danger is obvious, a landowner does not have a duty to warn of the danger. The Illinois Supreme Court recognized limits on a defendant's duty of reasonable care where the risks are obvious:

"Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition." *Ward v. K-Mart Corporation* (1990), 136 Ill.2d 132, 143.

There is no reason that the State should have anticipated that a bicyclist would attempt to ride on a trail about Illinois Canyon. The trail was accessible only by climbing a

steep, 104-step stairway. This certainly was no invitation to Mr. Shannessy to carry his bicycle up the stairway in order to reach the trail.

The Court believes that the actions of the Claimant were the sole proximate cause of his accident and he has failed to establish by a preponderance of the evidence that the State of Illinois has caused the injuries leading to his paralysis. The risk was obvious and the Claimant chose to accept that risk. Therefore, the claim is denied.

## ORDER

MITCHELL, J.

This matter comes before the Court on Claimant's motion for rehearing. After having reviewed the entire file and its previous order filed June 12, 1997, the Court finds that the argument of Claimant is not persuasive and denies Claimant's motion for rehearing, and the order entered June 12, 1997, remains in effect.