LILLIE SEIPP, Plaintiff-Appellant, *v.* THE CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

(No. 57335; ▮▮▮▮▮▮▮▮▮)

First District (3rd Division)—June 7, 1973.

Philip Z. Levinson, Jules Gershon, and Jerome M. Kaplan, all of Friedlander, Levinson & Gershon, of Chicago, for appellant.

James P. Daley, Robert Schmiege, James G. O'Donohue, Jerome Dixon, and Michael J. Gerrard, all of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an action for personal injuries based on negligence. At a jury trial in the circuit court of Cook County the court directed a verdict for the defendants on the question of liability and dismissed plaintiff's complaint at the close of plaintiff's evidence. Plaintiff appeals from the order granting defendants' motion for a directed verdict.

Plaintiff presents three issues for review: 1. Whether the court erred in excluding evidence of conduct by defendant Chicago Transit Authority after the accident had occurred to show that the C.T.A. had control over the premises on which the accident took place, 2. Whether the C.T.A. is liable for personal injuries where the occurrence took place on property owned by defendant Chicago and Northwestern Railway Company (hereafter called Northwestern) but used by passengers of the C.T.A. as a means of ingress and egress to the C.T.A. rapid transit station, and 3. Whether the Northwestern is liable for personal injuries to the plaintiff who was injured while walking along a path which was situated on Northwestern property.

We affirm.

Plaintiff was a middle-aged woman who lived in Skokie, Illinois, but who worked in Chicago. She used the facilities of the defendant C.T.A. as her means of getting to and from work. On November 2, 1966, as was her usual habit, she took the Skokie Swift, which was part of the C.T.A. system, to the end of the line in Skokie at which point she got off the train. She alighted onto a platform on the east side of the train. The train was facing north. The train having stopped, she walked from the platform, down stairs, and crossed two C.T.A. tracks in front of the train. The platform on the west side of the tracks was used by passengers who were going to Chicago. Between the platform and Terminal Street, which was west of the C.T.A. tracks and parallel to them, was a grassy field approximately in the middle of which ran a railroad track owned by the Northwestern which was parallel to the C.T.A. tracks and Terminal Street. The paved area with steps leading to the C.T.A. platform on the west side of the tracks was protected by a wooden fence. The fence did not extend in a northerly direction as far as the pavement extended.

Therefore, on the evening in question, plaintiff was able to walk past the end of the fence and onto a dirt path which ran from the C.T.A. pavement across the Northwestern track. At a point just west of the Northwestern track, the dirt path, which was unimproved in any way at the time of the accident, branched into two forks, both of which ended at Terminal Street. The dirt path had a slight grade and was used by persons cutting across the field. At about 5:45 P.M. on the evening in question, plaintiff walked down the incline, across the North-western tracks to a point midway between the track and Terminal Street. At this point she testified at trial that she stepped into a rut covered by snow in the path and fell on her right side, and as a result of this accident she sustained serious injuries to her arm. She testified that she was wearing boots and that there was a light snowfall on the path. She was walking by herself, but she testified the station was busy and that many people used the dirt path as a means of egress and ingress to the Skokie Swift terminal. Dorothy Long, Mrs. Seipp's daughter, testified that the path had been in existence for about a year before the occurrence and had developed coincidentally with the coming of the Skokie Swift to the area. Mrs. Seipp testified that she had used the path for about seven months prior to the accident.

On cross-examination of Mrs. Seipp, the defendants established that the C.T.A. had provided a paved, well-lighted walk for its passengers that headed in a northerly direction from the west side of the Skokie Swift tracks to Dempster Street, which ran east and west. The paved path ran parallel to the C.T.A. tracks and led to the south side of Dempster Street. There was some dispute as to whether the south side of Dempster Street was paved or was covered by cinders in the area where the paved walk led. The north side of Dempster Street was paved. Plaintiff's residence was located west of Terminal Street, and therefore west of the Northwestern track and the Skokie Swift Terminal, but it was located south of Dempster Street and north of the Skokie Swift platform. In order to take a paved route to her residence, plaintiff would have to cross Dempster Street to the north paved side of the street, proceed westbound, and then recross Dempster. Plaintiff referred to the dirt path which she actually took as a shortcut to her home. When taking this shortcut, plaintiff would necessarily have to pass the point at which the paved path to Dempster Street began. The dirt path ran perpendicular to the paved path.

The dirt path was not well lit. There was a lamppost on Terminal Street, approximately half way between the dirt path and Dempster Street which indirectly cast some light upon the dirt path, but there were no artificial lights which were intended to illuminate the dirt path.

Plaintiff sustained her injuries while walking on property which the Northwestern owned. It was stipulated that seven freight trains per week passed the point of the occurrence and that the Northwestern made daily track inspections in the area. The Northwestern did not have a station in the area, and its trains did not stop there.

One of the plaintiff's theories was that although the accident took place on Northwestern property, the C.T.A. exercised control over the dirt path to such an extent that it had a duty to provide a safe path for its passengers who used the path as a means of egress and ingress to the station, and that the presence of a rut in the path which proximately caused plaintiff's injuries showed that the C.T.A. was negligent in maintaining the path.

In her complaint, plaintiff alleged that the C.T.A. had control over the dirt path at the time of the occurrence and that the C.T.A. recognized this path as a much travelled route of its passengers, and acquiesced in its use as such. On defendants' motion made before the hearing of any testimony and after considerable discussion, the court ordered the plaintiff not to mention or bring into the issues any evidence of repairs that either of the defendants performed subsequent to the accident. Plaintiff then proceeded to make an offer of proof, still outside the presence of the jury, that subsequent to the accident the C.T.A. established steps from its property down the incline of the dirt path and that it laid crushed stones on the dirt path to improve its surface. Counsel for the C.T.A. admitted that the C.T.A. established the steps in 1970 and laid crushed stones. It appears from the record that the C.T.A. laid the crushed stones at approximately the same time that it established the steps. The record does not disclose exactly how much of the path was covered with stones. The court admitted plaintiff's exhibit number 1 which was a letter written on the stationery of the C.T.A. for the purpose of the offer of proof but not as evidence for the jury. The letter, dated March 17, 1971, was written by James R. Quinn, vice chairman of the C.T.A., and was as follows:

"March 17, 1971

Mr. A. G. Borowsky
5025 Crain Street
Skokie, Illinois 60076

Dear Mr. Borowsky:

Pedestrians walking across the Chicago and North Western Railway right-of-way west of our Skokie Swift terminal to reach the terminal are, in effect, illegally crossing the North Western property, and we have no right to recommend improvements.

We have already gone beyond our prudent judgment in the spreading of crushed stone and constructing steps on someone else's property for the convenience of our patrons who make use of this crossing. Suggestions to the railroad would not be·well received as it would establish the existence of a crossing of their railroad and, undoubtedly, would necessitate complete crossing protection, as required by the I.C.C.

I believe it is advisable to keep this crossing strictly on an informal basis. To go beyond this would, in my opinion, lead eventually to the fencing of the right-of-way by the North Western to prevent the crossing, which I am sure neither you or others want. I appreciate the interest that prompted you to write and regret that my reply could not be more favorable.

Yours very truly,

/S/ James R. Quinn

James R. Quinn
Vice Chairman"

During the direct examination of plaintiff Seipp, counsel continued to attempt to elicit evidence of subsequent repairs and asked Mrs. Seipp whether any changes had taken place since the accident occurred. Defendants' objection to the question was sustained. Outside the presence of a jury, the court held a hearing at which plaintiff's counsel made an offer of proof that if plaintiff were permitted to testify she would testify that the C.T.A. constructed a set of steps leading from the station to the dirt path, which was partially on the property of the C.T.A. and partially on the property of the Northwestern. The offer of proof further purported to show that plaintiff would identify exhibits which portrayed the steps and gravel in question. After considerable discussion, the court refused the offer of proof.

■■ Plaintiff contends that the trial court erred in refusing to allow her to testify about the subsequent repairs pursuant to the offer of proof. Our courts have held that evidence of subsequent repairs is not admissible for the purpose of showing prior negligence, but is admissible for the purpose of showing who had control of the premises on which the injury occurred when control is an issue. (*Kellems v. Schiele* (1938), 297 Ill.App. 388, 17 N.E.2d 604.) In a proper case, the court may admit evidence for the purpose of showing control under a limiting instruction which warns the jury not to consider the evidence for the purpose of the issue of negligence. (*Dallas v. Granite City Steel Co.* (1965), 64 Ill. App.2d 409, 211 N.E.2d 907.) The admission of evidence of subsequent repairs to show control is an exception to the general rule.

858

■■ The record shows that the trial judge refused to admit evidence of subsequent repairs or improvements for two main reasons. First, he anticipated that any evidence which showed that the C.T.A. exercised control over Northwestern property might be prejudicial to the Northwestern on the issue of liability in that the jury might be led to believe that the Northwestern acquiesced in the use of its property by the C.T.A. On the contrary, the Northwestern maintained that any improvements which the C.T.A. made on Northwestern's property were the acts of a trespasser and were made without the Northwestern's permission. Second, he thought that the date of the construction of the steps in February, 1970, was too remote in time from the date of the occurrence in November, 1966, to be probative of the fact that the C.T.A. exercised control over the path at the time of the accident. We think that it was not error for the trial court to refuse plaintiff's offer of proof.

Because the plaintiff based her case on the theory that the C.T.A. acquiesced in the use of the dirt path as a means of ingress and egress to the Skokie Swift station, caution must be exercised so that the jury is not led to the conclusion that because the C.T.A. constructed steps in 1970, it necessarily acquiesced in the use of the natural path as an informal means of egress and ingress in 1966. The record also suggests 1970 as the year in which the C.T.A. laid the crushed stones, and in the absence of any proof to show that the laying of the crushed stone and the construction of the steps were proximate in the time to the date of the occurrence, we believe the trial court acted properly in refusing to admit plaintiff's testimony. *Wood v. Prudential Insurance Co.* (1933), 271 Ill.App. 103.

■■ Plaintiff contends that the C.T.A. is liable to her for the injuries she sustained while walking on the dirt path, even though the accident occurred on that portion of the path which was located on the property of the Northwestern. There is a duty to provide an invitee with a reasonably safe means of ingress and egress, both within the confines of the premises owned or controlled by the inviter, and, within limitations dictated by the facts of the case, beyond the precise boundaries of such premises. (*McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill.App.3d 345, 272 N.E.2d 369.) We think the C.T.A. fulfilled its duty to its passengers by providing the illuminated paved path from the terminal to Dempster Street. The plaintiff knew of this route but elected to take a shortcut to her home, even though, as she testified, she knew that the dirt path was covered with snow and contained many ruts.

In *McDonald*, the court held defendant bowling establishment liable for injuries plaintiff sustained from falling in a rut on city property

which was adjacent to defendant's parking lot. The court pointed out that there was no designated walk area between the door of the bowling establishment and the street, where many of defendant's patrons parked their cars, and therefore, in the absence of such designated walk area, defendant owed a duty to its patrons to maintain those portions of its property and adjacent property which it assumed as a means of ingress and egress for its patrons.

When a means of ingress and egress is prescribed for invitees, it is the duty of the inviter to properly illuminate, give adequate warning of, or cause to be repaired a known, dangerous condition. (*Cooley v. Makse* (1964), 46 Ill.App.2d 25, 196 N.E.2d 396.) In *Cooley,* which plaintiff cites, the city-owned sidewalk on which plaintiff fell was the only means of ingress and egress to defendant's building. The court in *Cooley* found defendant tavern owner liable for injuries that a patron sustained as a result of falling into a natural defect in a brick wall which defendant knew was dangerous. Viewing the evidence in the instant case in its aspect most favorable to the plaintiff, as we must in deciding whether the trial court erred in directing a verdict for the defendant (*Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504), we find no evidence that the C.T.A. either prescribed the dirt path to its patrons as a means of egress or ingress or assumed its use as such at the time of the accident. Plaintiff's suggestions to the contrary are not supported by the evidence.

Plaintiff's third contention is that the Northwestern is liable to the plaintiff because the injury occurred while plaintiff was on Northwestern property. Plaintiff argues that the Northwestern knew that many people crossed its tracks and, therefore, had a duty of either maintaining the crossing in a proper manner, or fencing the property so that passengers of the C.T.A. could not use it as a shortcut. Plaintiff claimed she was an invitee on the Northwestern property; the Northwestern claimed that at most she was a licensee. The record indicates that plaintiff went on the Northwestern property for her own convenience; she was not an invitee.

■■■ Viewing the evidence in the light most favorable to plaintiff (*Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E. 2d 504) at most the Northwestern knew that patrons of the C.T.A. used the property as a shortcut. Even charged with this knowledge, the landowner's duty to a licensee is to disclose or warn against hidden dangers of which the landowner has knowledge. *Schoen v. Harris* (1969), 108 Ill.App.2d 186, 246 N.E.2d 849; *Hessler v. Cole* (1972), 7 Ill.App.3d 902, 289 N.E.2d 204.

In *Dent v. Great Atlantic & Pacific Tea Co.* (1955), 4 Ill.App.2d 500, 124 N.E.2d 360, the court held that a licensee must avoid at his peril an open hole which is concealed only by darkness. In the instant case, plaintiff knew that there were ruts covered with snow on the dirt path. Nevertheless, in poor light, she used the path. This is not a situation as in *McDaniels v. Terminal Railroad Ass'n* (1939), 302 Ill.App. 332, 23 N.E.2d 785, which plaintiff cites, where plaintiff was injured on a railroad's property by a heavy timber, which employees of the railroad negligently threw off a viaduct which was above the property. In that case, the court held that the railroad knew or should have known that the public used a path along its tracks and that it owed a duty to the public to keep a lookout for persons using the path.

The trial court did not err in directing verdicts for both defendants on the issue of liability. For the above reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and McNAMARA, J., concur.