JAMES A. McLAUGHLIN, Plaintiff-Appellant, *v.* RUSH-PRESBYTERIAN ST. LUKE'S MEDICAL CENTER, Defendant-Appellee.

First District (4th Division)    No. 77-193

Opinion filed January 11, 1979.

Jerome M. Brooks and Harry Horn, both of Chicago, for appellant.

French & Rogers, of Chicago (Richard G. French, Joseph A. Terc, and Timothy G. Keating, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, James A. McLaughlin, brought suit against defendant, Rush-Presbyterian St. Luke's Medical Center,[1] for personal injuries sustained when a subclavian catheter was lost in plaintiff's body due to defendant's alleged negligence. After the case was tried before a jury on the theory of *res ipsa loquitur*, a verdict was returned for defendant and judgment was entered accordingly.

The issue which plaintiff presents for review is whether the trial court erred in admitting evidence of a post-occurrence catheter design modification made by the manufacturer the year after plaintiff's injuries were sustained.

We affirm the judgment of the trial court.

Plaintiff was admitted to defendant hospital on April 14, 1973. On

---

[1] Deseret Pharmaceutical Co., Inc., the manufacturer of the subclavian catheter and coupler, was also named as a defendant in the complaint but was voluntarily dismissed by the plaintiff before a jury was impaneled.

April 19, 1973, a subclavian catheter was inserted into a large central vein under plaintiff's clavicle to permit intravenous feeding of a glucose substance and to monitor plaintiff's central venous pressure. This procedure involved the insertion of a 12-inch piece of catheter tubing. Four to five inches of the tubing remained outside the body, fastened by a suture and covered by a dressing. At the exposed end of the catheter, a metal coupler fastened the catheter to a larger intravenous tube which connected to a hanging bottle containing the glucose solution.

The catheter was completely covered by a dressing so that only the coupler could be directly viewed without removing the dressing. It was possible to determine that the apparatus was functioning satisfactorily from the results of central venous pressure readings and from the unimpeded flow of the intravenous fluid.

The coupler on the catheter in use at the time of the incident connected the catheter and the intravenous tube by friction. Defendant introduced evidence at trial, through the testimony of the assistant director of purchasing for the hospital, that the manufacturer of the catheter modified the design of its product in 1974 to include a screw adaptor on the coupler which locked the catheter to intravenous tubing. This testimony is challenged on appeal. Plaintiff also objects to certain testimony of one of the attending physicians regarding possible defects in the catheter.

An ulcer operation was performed on plaintiff on April 24, 1973. When leakage of the intravenous glucose fluid in the area of the catheter was noticed two days later, it was discovered that the exposed end of the catheter had become disengaged and that the catheter had slipped inside plaintiff's body. X rays were taken and an unsuccessful attempt was made to surgically recover the catheter. Later X rays indicated that the catheter had become lodged in the right ventricle of plaintiff's heart. The catheter has not been removed and the coupler which connected the catheter to the intravenous tubing was not recovered.

After hearing the evidence, the jury returned a verdict for the defendant hospital. Judgment was entered on the verdict. Upon the denial of his timely post trial motion, plaintiff appealed.

OPINION

Plaintiff contends that the trial court erred in allowing defendant to introduce evidence of post-occurrence modifications made by the manufacturer in the catheter's design. Defendant argues that this evidence was properly offered to show an alternative explanation of the occurrence which involved no negligence on the part of defendant.

Plaintiff cites *Day v. Barber-Colman Co.* (1956), 10 Ill. App. 2d 494, 135 N.E.2d 231, for the general rule that evidence of post-occurrence

change of conditions, repairs or precautions is not admissible as evidence of negligence. (See also *Seipp v. Chicago Transit Authority* (1973), 12 Ill. App. 3d 852, 299 N.E.2d 330.) Two grounds have been offered for the development of this rule—policy and relevance. *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749.

■■ First, evidence of post-occurrence changes has been excluded on policy grounds to avoid discouraging defendants from improving the place or thing that had caused the injury. (*Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749.) In our opinion there is no policy reason for excluding evidence of post-occurrence catheter design modifications in this case because the manufacturer of the product is not a party to the suit. The evidence of post-occurrence change in the catheter design did not prejudice the manufacturer nor was it introduced to prove the manufacturer's negligence. Accord, *Denolf v. Frank L. Jursik Co.* (1976), 395 Mich. 661, 238 N.W.2d 1; *McLaughlin v. Great Lakes Contracting Co.* (1978), 82 Mich. App. 729, 267 N.W.2d 489.

Lack of relevancy has been advanced as the second reason for excluding evidence of post-occurrence change. Authorities relying on this ground theorize that "[t]o improve the condition of the injury-causing object is therefore to indicate a belief merely that it has been *capable of causing such an injury*, but indicates nothing more ° ° °." (2 Wigmore, Evidence §283, at 151 (3d ed. 1940).) However, if relevancy is the only criterion to be considered, Professors Wigmore and McCormick agree that evidence of post-occurrence modifications would meet the usual standards of relevancy. 2 Wigmore, Evidence §283, at 151 (3d ed. 1940); McCormick, Evidence §275, at 666 (2d ed. 1972).

The Federal Rules of Evidence contain a provision regarding the admissibility of evidence of post-occurrence remedial measures. (Fed. R. Evid. 407.) Rule 407 states:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

The second sentence of this rule significantly limits its scope. Exclusion is required only when the evidence of a post-occurrence change is offered as proof of negligence or culpable conduct. In all other cases, if the evidence is relevant to the issues in the case, it should be admitted.

Additionally, our courts have held evidence of post-occurrence modifications admissible as relevant to the issue of design alternatives in

products liability cases. (*Cunningham v. Yazoo Manufacturing Co.* (1976), 39 Ill. App. 3d 498, 350 N.E.2d 514; *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 281 N.E.2d 749.) As stated in *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 319, 281 N.E.2d 749, 752:

> "If the rule excluding post occurrence changes depends upon policy considerations or theories of relevancy either of which may no longer be applicable to products liability cases then the question arises whether the exclusionary rule is applicable in such cases. As indicated in the earlier paragraphs of this opinion, evidence of alternative methods or designs are now deemed relevant and material even where defendant's liability depends on negligence. *Moren v. Samuel M. Langston Co.*, 96 Ill. App. 2d 133, 237 N.E.2d 759. See also, *McCormack v. Hankscraft Co.* (Minn. 1967), 154 N.W.2d 488 & *Hartmon v. National Heater Co.* (Minn. 1953), 60 N.W.2d 804."

Here, plaintiff does not dispute that in an action against the manufacturer of the catheter, evidence of the design change, which he now seeks to exclude, would be admissible as evidence relevant to the issue of design defect or the feasibility of alternative design.

Although both parties correctly assert that this is not a products liability case, plaintiff argues that defendant's introduction of evidence of post-occurrence design modifications in the catheter interjected into the case a false issue focusing on the product rather than on defendant's alleged negligent use of the product. For this reason, plaintiff contends that the evidence of design change was irrelevant and prejudicial. We do not agree.

■■ An examination of the issues raised by the instant case explains why plaintiff's contention must be rejected. The doctrine of *res ipsa loquitur* allows proof of negligence on circumstantial evidence when direct evidence of the cause of the injury is primarily within the knowledge and control of the defendant. It has not been argued that the doctrine of *res ipsa loquitur* was improperly applied in this case. The presumption of negligence permitted by the doctrine is, of course, rebuttable by the defendant. *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 207 N.E.2d 305.

Where the doctrine of *res ipsa loquitur* is properly applied, the trier of fact is permitted to infer that a defendant breached a duty to the injured plaintiff because the instrumentality which caused the injury was under the control or management of the defendant, the plaintiff did not contribute to the injury and the injury is one that would not have occurred except for the negligence of the defendant. (*Smith v. General Paving Co.* (1978), 58 Ill. App. 3d 336, 374 N.E.2d 1134.) The plaintiff must still prove

that his injuries were proximately caused by the defendant. *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259.

■ In defense of the presumption raised by the application of the doctrine, the defendant may offer a satisfactory explanation of the accident, including a definite cause for the accident which is consistent with a finding of due care on the part of the defendant, or show that defendant exercised such care in all possible respects that the accident was due to some unpreventable cause. (See *Dierman v. Providence Hospital* (1947), 31 Cal. 2d 290, 188 P.2d 12.) It is for the trier of fact to weigh all the evidence and determine whether the circumstantial evidence of negligence has been overcome by defendant's proof. *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 207 N.E.2d 305.

By relying on the *res ipsa loquitur* theory, plaintiff attempted to prove that the subclavian cathether was dislodged and became lost in plaintiff's body as a proximate result of defendant's failure to exercise reasonable care in the use and maintenance of the catheter. In rebuttal, the defense undertook to show that it exercised all reasonable care in treating plaintiff but that plaintiff's injuries may have resulted from a defectively designed catheter.

Evidence is relevant if it tends to establish a fact in controversy or to render a proposition in issue more or less probable. (*Marut v. Costello* (1964), 53 Ill. App. 2d 340, 202 N.E.2d 853, *aff'd* (1966), 34 Ill. 2d 125, 214 N.E.2d 768.) Here the evidence of post-occurrence change was relevant if it tended to prove or disprove that defendant's actions were the proximate cause of plaintiff's injuries.

An example of a situation similar to the case at bar is found in *Steele v. Wiedemann Machine Co.* (3d Cir. 1960), 280 F.2d 380. There a factory worker, who was injured by a punch press on the job, sued the manufacturer of the press on the theory that the manufacturer failed to provide a sufficient safety lever on the press. To rebut plaintiff's evidence that a design defect was the proximate cause of his injuries, the defendant manufacturer introduced a purchase order from plaintiff's employer ordering a new safety lever for the press one month after the occurrence, thus, attempting to indicate that the original safety lever was missing, worn or broken at the time of the accident. The court in *Steele* held that the trial court properly admitted the purchase order as evidence of post-occurrence change because the employer who made the repairs was not a party to the suit and the evidence was relevant to show an alternative theory of causation of plaintiff's injuries.

■ We think that the evidence of the manufacturer's post-occurrence modification of the catheter to include a very simple locking mechanism in the coupler was relevant to the issue of proximate cause by tending to establish a probable alternative theory of causation consistent with a

finding that the defendant hospital had exercised reasonable care. Therefore, plaintiff's contention that this evidence introduced a prejudicially false issue into the case must be rejected.

In summary, we hold that evidence of post-occurrence modifications in the catheter's design was not subject to exclusion on policy grounds because the imposition of liability was not sought against the manufacturer who took the remedial action. Further, it cannot be denied that the defendant had every right to rebut evidence tending to show its acts were negligent and the proximate cause of plaintiff's injuries or to attempt to establish that some other factor was the probable cause of plaintiff's injuries. The evidence of post-occurrence design modification was relevant to show an alternative probable cause of the incident. The question of the value to be given this evidence as proof of the conclusion urged by the defendant was for the determination of the jury.

For these reasons the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, P. J., and ROMITI, J., concur.