(No. 87-CC-0370-)

CATHERINE M. CARLSON, Claimant, *v.* BOARD OF REGENTS OF THE REGENCY UNIVERSITIES SYSTEM, as administrator of Illinois State University, an agency of the State of Illinois, Respondent.

*Opinion filed May 13, 1994.*

PREE & PREE and ROBERT S. O'SHEA, for Claimant.

JOSEPH GOLEASH, JR., for Respondent.

## OPINION

MITCHELL, J.

The evidentiary hearing was held August 15, 1991, in the Springfield, Illinois, Court of Claims facility. At the completion of the hearing, it was agreed that the parties would have the opportunity to introduce further evidence by evidence depositions, if filed prior to January 1, 1992. No such evidence depositions were filed.

The transcript of the hearing was filed on September 20, 1991, and after many continuances granted to Claimant by agreement of the parties or for good cause, Claimant's brief was filed on December 16, 1992.

Though Respondent was given more than adequate time to file its brief, it has not done so.

This is a claim for personal injuries suffered on September 13, 1984, in the course of a fall by Claimant on a wet tile floor in the exit passageway of a shower-bathroom of a dormitory at Illinois State University. Claimant alleges that her fall was the result of Respondent's negligence in its maintenance of the exit passageway.

Her uncontradicted testimony shows that Claimant, then a 19-year-old sophomore student at ISU, at about 4:00 p.m., September 13, 1984, had showered, "dried off," put on her rubber thongs, robe and contact lenses, and entered the "dark" exit passageway, where she slipped on a puddle of water which was caused by a pair of lady's "soaking wet" trousers, hanging on a wall hook to Claimant's left. Although the bathroom area she was leaving was lighted, both the exit passageway and the floor therein were dark. There was nothing which Claimant could grab to arrest her fall.

Claimant's testimony further shows that, because there were other facilities in the building for laundering, girls in the dormitory had complained to the University's resident assistants in each of the four wings and, specifically, to resident assistants Schimke and Cain, that the "* * * international students * * * tended to do their laundry in the bathrooms."

Claimant's testimony, medical reports received without objection and a stipulation as to medical expenses show that she suffered injuries in the fall resulting in: (1) permanent and severe migraine headaches; (2) a neck injury for which she later underwent an anterior cervical disectomy and inter-body fusion of the C5-6 disc with bone graft from the right iliac crest; (3) a temporary loss

of feeling in her left arm which was corrected by the neck surgery; (4) permanent "* * * pinching, burning in my left shoulder blade, pain in my arm and in my * * * two fingers and my thumb;" and (5) a temporary bruise on her right hip.

In the course of examination and treatment by many physicians, Claimant was prescribed not less than 27 different medications, resulting in a temporary chemical addiction. In addition to the neck surgery, Claimant has received one or more x-rays, bone scans, CAT scans, EMGs, myelograms, discograms, and angiograms. She has worn or borne a figure eight brace, hip soaking, diathermy, an arm sling, a finger brace, ultra sound, transcutaneous electrical new stimulation, hot packs, cervical traction, a soft collar, and a high collar.

Claimant incurred medical expenses in the sum of $44,754.91 through sometime in 1986, when she received classes in pain management at the Mayo Clinic and ceased the use of all medication and medical help for matters arising from the 1984 injuries.

Three physicians have advised Claimant that she "* * * will always have these headaches." Dr. Alvary, who performed the neck surgery with Dr. Nagib in 1985, reported in 1986:

"I have advised her that all her symptoms were directly caused by her accident. I have treated her before, in 1982, for an unrelated back problem and I have a series of records to show that in 1980, 1981 and 1982 she did not mention any complaints similar to the one for which she had her surgery. Her pain was neurological and not myofascial in origin and it was directly related to trauma."

The Court has on many occasions required a showing of actual or constructive knowledge of a dangerous condition in order to establish the State's negligence. (*Smith v. State* (1989), 41 Ill. Ct. Cl. 42 (standing water).) Here, this Court finds that Respondent had constructive knowledge

174

of the standing water puddle in the passageway. Had its employees responded to students' complaints as to laundering of clothes in the washroom, the State would have discovered the wet condition of the exit passageway. Thus, in *Ondes v. State* (1991), 43 Ill. Ct. Cl. 272 at 277, this Court recognized that the State and its maintenance people would be on constructive notice of a dangerous gymnasium condition where students had knowledge of the condition (*i.e.*, students' swinging on and breaking light fixtures).

"The State's duty to persons legitimately on its premises is to maintain reasonably safe conditions." (*Owens v. State* (1989), 41 Ill. Ct. Cl. 109, 111.) It is the opinion of this Court that the condition of the exit passageway floor was dangerous (*i.e.*, a water puddle, a dark area, absence of handrail, absence of warnings of risk), that Respondent had constructive knowledge of that condition, that Respondent was negligent in failing to maintain a safe passageway.

The Court hereby awards $100,000 to the Claimant, Catherine M. Carlson.