(No. 83-CC-2044–▮)

CLAY M. HAMBRICK, as Administrator of the Estate of
DELORES A. HAMBRICK, Deceased, Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 28, 1995.*

JOHN P. GIBBONS, for Claimant.

JIM RYAN, Attorney General (CLAIRE TAYLOR, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

Claimant Clay M. Hambrick, administrator of the estate of Delores A. Hambrick, deceased, brings this action for compensatory damages pursuant to section 8 of the Illinois Court of Claims Act. (705 ILCS 505/8.) Claimant asserts that his late wife, Delores Hambrick, died as a direct and proximate result of negligence committed by the State of Illinois on the interchange of Illinois Route 203 and Interstate 270 in Madison County, Illinois.

At approximately 12:30 a.m., March 29, 1981, Claimant was driving a 1981 Honda 1100 motorcycle in a northerly direction on Illinois Route 203 with his wife, the decedent, riding on the back of the motorcycle. They were returning to their home in Ferguson, Missouri, from a gathering of friends in Granite City, Illinois. Claimant turned off Illinois Route 203 onto the interchange to proceed westbound on Interstate 270. He and the decedent were unfamiliar with this particular stretch of road, which was illuminated with 150 watt mercury vapor lamps, located east of the point where the interchange ramp feeds into a collector-distributor lane running parallel to the westbound lanes of Interstate 270. There also were lights located on the south side of the eastbound lanes of Interstate 270 parallel to the collector-distributor lane. The lights were operating at the time.

Claimant proceeded onto the collector-distributor lane which is bordered on the left by a median approximately eight inches high and two feet wide that bears no striping. Claimant looked behind him to his left for approaching vehicles. Seeing none, he proceeded to merge onto the westbound lanes of Interstate 270 at about 55 miles per hour, striking the median. As a result, the motorcycle became airborne, landing in the westbound lanes

of Interstate 270 and sliding across these lanes. The decedent was thrown from the vehicle and suffered severe head injuries.

Both Claimant and the decedent were taken to St. Elizabeth Medical Center in Granite City, Illinois. The decedent was transferred to Firmin-Desloge Hospital in St. Louis, Missouri, where she died on March 31, 1981, as a result of her injuries. Claimant was treated at St. Elizabeth Medical Center, where mandatory blood tests showed his blood alcohol concentration to be .107 by weight. Although State law provides that the legal level of intoxication is 0.10, Claimant denies being intoxicated or under the influence of alcohol at the time of the accident. He was not charged with driving under the influence of alcohol.

The evidence consists of deposition testimony of Claimant and Robert Freesmeier, the decedent's employer at the time of her death; photographs of the accident scene; and State and Federal regulations regarding highway design, construction and maintenance. Claimant has offered evidence of a subsequent accident at the same location and subsequent remedial measures performed by Respondent following the accident in the instant case and the subsequent accident. Respondent objects to this evidence.

Both parties have submitted briefs, and the Commissioner heard arguments on May 17, 1990. Both parties then submitted supplemental briefs.

Claimant asserts that Respondent breached its duty of care by failing to exercise reasonable care in the construction and maintenance and care of these highways, and, specifically, by failing to follow standards of the United States Department of Transportation, Federal Highway Administration. Claimant contends this breach

was the direct and proximate cause of the death of the decedent. In the alternative, Claimant asserts that in the absence of violations of regulations, Respondent has a general duty of exercising reasonable care, which Respondent breached by failing to properly illuminate and/or mark the median separating the collector-distributor lane and the westbound lanes of Interstate 270.

However, Respondent contends that the interchange in question was designed, constructed and maintained in compliance with the standards of the Illinois Department of Transportation and the United States Department of Transportation. Respondent also claims that it did not breach its general duty of exercising reasonable care because it had no notice of any dangerous conditions at that interchange prior to Claimant's accident. Furthermore, Respondent asserts that Claimant himself proximately caused the accident because he was presumptively under the influence of alcohol as a result of his blood-alcohol concentration being in excess of the legal level; he was driving at a speed in excess of what was reasonable and proper under the circumstances; and he failed to keep a proper lookout.

The State is charged with a duty to maintain its roads and highways in a reasonably safe condition for the purpose for which they were intended, and in order for a Claimant to recover for injuries due to a breach of that duty, the Claimant must prove by a preponderance of the evidence that there was a breach and that this breach proximately caused the injuries sustained by the Claimant. *Preikshat v. State* (1985), 37 Ill. Ct. Cl. 29.

Claimant asserts that Respondent breached its duty by failing to comply with Federal highway standards set forth in the United States Department of Transportation, Federal Highway Administration, *Manual on Uniform*

*Traffic Control Devices* (1978 edition), hereinafter referred to as the Federal manual. Although none of the Federal manual is contained in the file of this case, portions are quoted in the parties' briefs.

The following are pertinent excerpts from the Federal manual:

"Under authority granted by Congress in 1966, the Secretary of Transportation has decreed that traffic control devices on all streets and highways in each state shall be in substantial conformance with standards issued or endorsed by the Federal Highway Administrator. (Page 1A-3).

\* \* \*

The responsibility for traffic control devices rests with a multitude of governmental jurisdictions. In virtually all states, traffic control devices placed and maintained by state and local officials are required by statute to conform to a State Manual which shall be in substantial conformance with this Manual. Many Federal agencies have regulations requiring standards in conformance with this Manual for their control device application. (Page 1A-3).

\* \* \*

Islands should be carefully planned and designed to provide travel paths that are obvious, easy to follow, and continuous, so as not to constitute a hazard in the roadway. (Page 5B-1).

\* \* \*

Islands should be clearly visible at all times and from a position sufficiently in advance so that the vehicle operators will not be surprised by their presence. Islands should occupy the minimum of roadway space needed for the purpose and yet be of sufficient size to be noticeable. (Page 5B-1).

\* \* \*

Easy recognition of islands by approaching vehicle operators is necessary for efficient and safe operation. The forms or means of designating island areas vary, depending on their sizes, locations, and functions, and also the character of the adjacent area, rural or urban. An important consideration, in all locations, is to provide a contrast in color, and preferably texture, between islands and adjacent pavements.

Generally, islands should present the least potential hazard to approaching vehicles and yet perform their intended functions. When curbs are used, the mountable type is preferable except where a barrier curb is essential for traffic control or pedestrian refuge. Barrier curb also may be used on islands where traffic control devices are installed.

Islands may be designated as follows:

1. Raised and outlined by curbs and filled with pavement, turf, or other material.

2. Formed by pavement markings (sometimes supplemented by buttons or raised bars or flexible stanchions on all paved areas).

3. Unsurfaced areas (sometimes supplemented by delineators, guideposts, or other devices). (Page 5B-2).

* * *

"All islands and the proper channels of travel through them should be made clearly visible at night by adequate reflectorization and/or illumination. Illumination of refuge islands, including their approach-end treatment, should be sufficient to show the general layout of the island and immediate vehicular travel paths, with the greatest concentration of illumination at points of possible danger to pedestrians or vehicles, as at barrier curbs or other structures." (Page 5D-1).

Although Respondent contests the assertion that the median in question is an "island" as meant in the above regulations, Respondent has not presented any evidence contrary to that assertion. Because of the wording of the regulations, which will be analyzed below, it is not dispositive whether the median is an "island." For the sake of argument, we will give Claimant the benefit of the doubt and accept that the median is an island.

Respondent contends that pursuant to the above-quoted regulations from the Federal manual, *The Illinois Manual on Uniform Traffic Control Devices* (1958 and 1979 editions), hereinafter referred to as the State manual, is in substantial compliance.

Respondent also contends that the interchange in question was designed, constructed, and maintained in compliance with the State manual. Claimant has offered no evidence to show that the interchange's design, construction, or maintenance failed to comply with the State manual.

Respondent correctly argues that based on the language in the Federal manual, the sections quoted above regarding the illumination and delineation of islands are advisory and permissive in nature, not mandatory. The regulations state what agencies should and may do regarding islands, not what they must do.

Claimant argues that the wording indicates the duty of the State to properly construct, design, mark, and

maintain highways. This may very well be true, and Respondent's general duty of due care will be discussed below.

It seems clear that from the wording of the passages quoted above, Respondent was not in violation of any mandatory Federal regulations regarding illumination or delineation of the median in question. Furthermore, it is not asserted that Respondent was in violation of any of its own regulations.

In the absence of violation of any regulations, Claimant contends that Respondent still had a general duty to keep its roadways in a reasonably safe condition and to maintain adequate and proper warning signs or devices alerting the public to unusual and dangerous conditions. (*Consolidated Freightways v. State* (1985), 37 Ill. Ct. Cl. 32.) Claimant claims Respondent breached this duty by failing to properly illuminate the section of the interchange where the accident occurred and/or failing to mark the median to alert motorists of its presence.

It is true that Respondent has a general duty in absence of any regulatory violations. To prove negligence, Claimant must also prove that Respondent had notice of a dangerous condition; that in spite of such notice, Respondent breached its duty; and that this breach was a proximate cause of the injuries suffered. Claimant has failed to prove all three of these elements, which are necessary for a finding of negligence. In fact, Claimant's citing of *Consolidated Freightways* fails to support his argument. That case can be distinguished from the instant case in that the Court found that numerous accidents occurred on the stretch of road at issue there, giving the State notice of the dangerous condition. *Id.* at 34.

Upon looking at the diagram showing location of illumination at the interchange in question, it is apparent

that a potentially dangerous condition did exist with the closest lighting located to the east of the site where the accident occurred, rather than directly above the collector-distributor lane. A motorist exiting the ramp and entering the collector-distributor lane would have the lighting behind him. Thus, the absence of any markings and striping or the median, would make the median difficult to see in such a condition where the motorist was backlit.

However, the mere fact that a defective condition existed if, in fact, it did exist, is not in and by itself sufficient to constitute an act of negligence on the part of Respondent. (*Cotner v. State* (1987), 40 Ill. Ct. Cl. 70; *Palmer v. Northern Illinois University* (1964), 25 Ill. Ct. Cl. 1.) The burden is upon Claimant to show that the State had actual or constructive notice of defects that cause injuries. (*Cotner*, 40 Ill. Ct. Cl. at 72; *Norman v. State* (1982), 35 Ill. Ct. Cl. 693.) Claimant has presented no evidence to show that Respondent had actual or constructive notice of a dangerous condition at the interchange in question. Furthermore, Respondent represents that this is the first accident involving the median on this collector-distributor lane since completion of construction of the interchange in 1962. Claimant has failed to produce evidence of any complaints to Respondent or incidents that would show Respondent had notice of a dangerous condition.

Claimant attempts to show notice through Claimant's testimony that he saw tire marks and gouges in the median in question weeks after the accident. There is no evidence, however, that Respondent was aware of these marks or that they were in fact what Claimant purports them to be, i.e., evidence of other motorists striking the median prior to Claimant's accident. Without notice, there can be no breach, and without breach, there can be

no proximate cause. Therefore, Claimant has failed to show that Respondent was negligent.

In further support of his argument, Claimant requests the Court take judicial notice of an action against Respondent resulting from a subsequent motorcycle accident at the same location at approximately the same time of day. Although the occurrence of a similar accident at the same location under similar circumstances buttresses the assertion that a dangerous condition existed, it fails to rebut the fact that Respondent had no actual or constructive notice, because the other accident occurred after Claimant's accident.

In addition, Claimant wishes the Court to consider subsequent remedial measures Respondent took at the interchange after the accident occurred as evidence of negligence. Evidence of subsequent remedial measures generally is prohibited, but there are exceptions. Claimant asserts that such evidence is permissible, according to holding in *McLaughlin v. Rush-Presbyterian St. Lukes* (1979), 68 Ill. App. 3d 546, 386 N.E.2d 334, and *Lubbers v. Norfolk & Western* (1986), 147 Ill. App. 3d 501, 498 N.E.2d 357.

However, these cases fail to support Claimant's argument and are inapposite to the instant case. The use of evidence of subsequent remedial measures in *McLaughlin* involved post-occurrence change in the design of a catheter in a medical negligence action against a hospital. The court admitted the evidence because the manufacturer of the catheter was not a party to the suit, and admission of the evidence did not prejudice the manufacturer. Nor was it introduced to prove the manufacturer's negligence. The court also cited the Federal Rules of Evidence, which state that evidence of subsequent remedial measures is inadmissible to prove negligence or culpable

conduct but is admissible for such other purposes as providing ownership, control, or feasibility of precautionary measures, if controverted, or impeachment. (*McLaughlin*, 68 Ill. App. 3d at 549.) In the instant case, Claimant wishes to use Respondent's own subsequent remedial measures against Respondent to prove Respondent's negligence, a tactic of which the court in *McLaughlin* would surely disapprove.

In *Lubbers*, where admissibility of subsequent repairs to a train crossing signal was at issue, the court also stated that evidence of subsequent repairs or improvements is inadmissible to show defendant's negligence, but such evidence may be used for proving ownership, feasibility of precautionary measures, or impeachment. In that case, the court found that the plaintiff simply stated that the evidence would have been admissible to show defendant's notice of the problem and the feasibility of making repairs; however, the plaintiff failed to show how these matters relate to any of the issues involved in that case. *Lubbers*, 147 Ill. App. 3d at 515.

In the instant case, Claimant is not seeking to use evidence of subsequent remedial measures to prove ownership, control, feasibility of precautionary measures, or impeachment, but to show Respondent's negligence. Therefore, Claimant's reliance on these exceptions is misplaced. Respondent correctly states the rule that subsequent remedial measures can be used as evidence in only those narrow exceptions and never to prove negligence. *Davis v. International Harvester Co.* (1988), 167 Ill. App. 3d 814, 521 N.E.2d 1282.

Although it is unnecessary to decide the proximate cause of the accident because Respondent had no actual or constructive notice of a dangerous condition, the issue of proximate cause was hotly contested by the parties and deserves to be addressed.

Despite the fact that a dangerous condition existed, Claimant still must prove the condition to be the proximate cause of the decedent's death. *Nunley v. Village of Cahokia* (1983), 115 Ill. App. 3d 208, 450 N.E.2d 363; *Misch v. Meadows Mennonite Home* (1983), 114 Ill. App. 3d 792, 449 N.E.2d 1358.

Respondent contends Claimant's negligence was the sole proximate cause of the accident. This contention is supported by the evidence. Blood-alcohol testing is recognized as a proper means of proving intoxication in personal injury actions. (*Burris v. Madison County* (1987), 154 Ill. App. 3d 1064, 507 N.E.2d 1267; *Thomas v. Brandt* (1986), 144 Ill. App. 3d 95, 493 N.E.2d 1142.) In addition, section 501.2(b) of the Illinois Vehicle Code (625 ILCS 5/11—501.2(b)) states:

"Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person's blood or breath at the time alleged or shown by analysis of the person's blood, urine, breath, or other bodily substance shall give rise to the following presumptions:

\* \* \*

3. If there was at that time an alcohol concentration of 0.10 or more, it shall be presumed that the person was under the influence of alcohol."

It is uncontroverted that Claimant's blood-alcohol concentration shortly after the accident was 0.107 by weight, giving rise to the presumption that Claimant was under the influence of alcohol. To rebut this presumption, Claimant testified that he did not feel intoxicated. However, it is well established that a motorist can not feel intoxicated but still be under the influence to the extent that his ability to operate a motor vehicle is compromised.

In addition, Claimant admits that he was accelerating to highway speed (approximately 55 miles per hour) on a stretch of road with which he was unfamiliar. Also, at that time, he was looking behind him and not ahead, where the median was located.

Although because of the failure of Claimant to establish that Respondent had notice of a dangerous condition, proximate cause of the accident was not established, the Court should note that Claimant was, at least, contributorily negligent, or, at most, his negligence was the sole proximate cause of the accident.

It is unfortunate and tragic that a life was lost, either due to a dangerous highway condition or to Claimant's own negligence. However, the Court must follow the law of this State, and this Claimant's claim must be denied because he failed to show Respondent had notice of a dangerous condition, that ignoring that condition resulted in Respondent breaching its duty of care, and that a breach of this duty was the proximate cause of the decedent's death.