(No. 93-CC-3412–

PATRICIA KIPPING, Claimant, *v.* ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY, Respondent.

*Order filed December 22, 1999.*

CROWDER & SCOGGINS (ALAN PIRTLE, of counsel), for Claimant.

JIM E. RYAN, Attorney General (BRIAN J. DEES, Assistant Attorney General, of counsel), for Respondent.

## ORDER

MITCHELL, J.

The Claimant, Patricia Kipping, brings this action for compensatory damages pursuant to the Illinois Court of Claims Act, 705 ILCS 505/8(d). The Claimant's action is in tort for personal injuries suffered as a direct and proximate result of negligence committed by the Respondent, the State of Illinois. A hearing was held by this Court on May 4, 1998.

The Claimant was an invitee at the Department of Employment Security, hereinafter referred to as "the Department," in Belleville, Illinois. Claimant arrived at the Department around 10:00 a.m. on the rainy morning of September 21, 1992, accompanied by her husband, Stanford Kipping. There is only one entranceway into the Department building and only one door in which persons can enter, the right-hand door. The left-hand door is locked and has a sign on it instructing persons to use the other door. Normally there is a heavy weather mat placed behind the right-hand door in the entranceway to allow persons entering to wipe their feet and keep the entranceway reasonably dry.

Claimant testified that, upon approaching the entrance, Stanford Kipping opened the right-hand door for

his wife, Patricia Kipping, who took a step with her right foot, then another with her left which slipped out from underneath her resulting in her left knee hitting against the tile floor. Patricia Kipping further testified that the weather mats had been over behind the locked left-hand door and there was a wet spot on the tile in the entranceway behind the right-hand door at the time of the incident. Stanford Kipping also testified that, at the time of Claimant's fall, the mats had been positioned over to the left of the right-hand door.

After getting up off the floor, Claimant went into the office of Dr. Edith Crisman, office manager of the Department. Claimant filed an accident report with Dr. Crisman, then proceeded to Belleville Memorial Hospital for x-rays. Nothing was found to be broken in Claimant's left knee, but there was an abrasion, bruising and swelling. Claimant was advised to continue coming to the Memorial Hospital as well as Red Bud Hospital for physical therapy on her knee.

Claimant testified as to having trouble with her left knee while walking, kneeling, sitting and other routine movements after her fall at the Department. Due to this discomfort, Claimant went to see Dr. Kriegshauser in St. Louis County to take another look at her knee. Dr. Kriegshauser testified that the Claimant had cartilage damage in her left knee and suggested Claimant undergo arthroscopic knee surgery in order to help relieve the discomfort Claimant was experiencing. Claimant underwent the arthroscopic surgery in January of the following year on her left knee. Claimant accrued $4,019.15 in medical bills due to the injury to her left knee.

James Mertz, field office supervisor at the Department, testified that, as part of his duties, he routinely does a walk-through inspection of the building, and

among the areas he would check was the entranceway. He further testified that it was departmental custom that the mats in the entranceway be positioned behind the right-hand door to absorb tracked in water and protect the public from possible accidents due to water spots in the building. Dr. Crisman's testimony parallels James Mertz's as to the correct positioning and purpose of the mats in the entranceway. James Mertz also stated that during his walk-throughs, if he observed the entranceway mats not behind the right-hand door, he would reposition them, lining them up with the right-hand door.

Before evaluating this matter on its merits, this Court has been asked to resolve a number of issues. The Respondent had filed a motion for leave to file their brief instanter and Claimant had filed an opposition to Respondent's motion. The Court believes that granting the Respondent's motion will not prejudice the Claimant. Therefore, Respondent's motion to file their brief instanter is hereby granted.

The first issue the Court was asked to resolve was the evidence dispute relating to the taping of a telephone conversation between Dr. Crisman and Patricia Kipping. After Patricia Kipping fell, she went to the hospital then back to her home in Red Bud. When Claimant arrived home, there was a message on her answering machine from Dr. Crisman asking Patricia Kipping to call her at the Department. Patricia Kipping called Dr. Crisman promptly and, while conversing with Dr. Crisman, decided to record the conversation on her answering machine in order to preserve the conversation. The Claimant, in her closing brief, argues that the taped conversation should be admissible and this Court agrees, but for different reasons. Claimant argues that this taping does not violate the Illinois Eavesdropping Act (720 ILCS

5/14—1) because one of the parties consented to the conversation and this conversation occurred before the 1994 amendment to the Eavesdropping Act making one party consent illegal and a violation of the Act.

Although this argument would allow for the admission of the taped conversation if it fell under the Eavesdropping Act, it is nonetheless a moot point because the taped conversation between Dr. Crisman and Patricia Kipping is outside the scope of the Eavesdropping Act. The Eavesdropping Act does not govern the recording of a conversation by a party to that conversation; it governs the taping by an outside party to the conversation. (*People v. Rodriguez* (1997), 289 Ill. App. 2d 223, 680 N.E.2d 757.) No eavesdropping occurs where an individual to whom statements are made or directed records them, even without knowledge or consent of the person making the statements, because the declarant does not intend to keep his statements private vis-a-vis that individual. (*Bender v. Board of Fire and Police Commissioners of Village of Dolton* (1989), 183 Ill. App. 3d 562, 539 N.E.2d 234.) A party to a conversation should not be restricted in repeating or testifying to what was said to him. The recording of a conversation by a party to the conversation is simply a means of preserving a more accurate account of what he had heard. Therefore, there can be no invasion of an expectation of privacy when a party to a conversation makes a recording of the conversation. (*People v. Beardsley* (1989), 115 Ill. 2d 47, 503 N.E.2d 234.) In the matter before this Court, the conversation between Dr. Crisman and Patricia Kipping does not constitute eavesdropping and therefore Claimant should not be restricted from entering the taped conversation into evidence. In the taped conversation, Dr. Crisman stated, "I think moving those rugs over helped too, because they were in a

place where, uh, some people bypassed the carpet and walked on the slippery floor and that ain't no good." She also told the Claimant, "Well, I think that the janitor had moved them [the rugs] over the weekend when he cleaned the floor and * * * he's good hearted but not too bright."

The second issue the Court was asked to resolve was the evidence dispute relating to the admission into evidence of the subsequent remedial measures taken by the Department after Patricia Kipping fell. The general rule on this matter is that post-accident changes are not admissible to prove negligence in Illinois. (*Offutt v. PenoVer Merchants Transfer Co.* (1976), 36 Ill. App. 3d 194, 343 N.E.2d 665.) The rationale for the general rule is twofold; correction of unsafe conditions should not be deterred by allowing that such act will constitute negligence and, more fundamentally, post-occurrence change is insufficiently probative of prior negligence, because later carefulness does not necessarily imply prior neglect. (*Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 417 N.E.2d 154.) However, Illinois courts have allowed evidence of subsequent remedial measures to be admissible if offered to show something besides proof of negligence. Exclusion of post-occurrence remedial measures is required when evidence of post-occurrence change is offered as proof of negligence or culpable conduct; in all other cases where evidence is relevant to issues in the case it should be admitted. *McLaughlin v. Rush Presbyterian Memorial Hospital* (1979), 68 Ill. App. 3d 546, 386 N.E.2d 334.

In the matter before this Court, the Claimant offers evidence of a subsequent remedial measure by the Department in order to help clarify a factual dispute as to whether the conditions of the doorway entrance at the

Department building are as the Claimant contends or as the Respondent contends. Due to the fact that the evidence of the post-occurrence change is not offered to prove the Respondent's negligence and is relevant to issues in this case, it is admissible into evidence. There is one final hurdle the Claimant must clear to get evidence of the subsequent remedial measure into evidence. To be admissible, evidence as to a condition which allegedly caused an accident must relate closely enough in point of time to the time of the accident to make it apparent that the condition has not changed. (*Weiss v. Sears, Roebuck and Co.* (1962), 38 Ill. App. 2d 198, 186 N.E.2d 797.) In this case, the remedial measure was taken once Dr. Crisman received word of the accident from Patricia Kipping, and the conditions of the entranceway had not changed by any noticeable degree to warrant non-admissibility of the subsequent remedial measure into evidence in order to prove the conditions of the entranceway at the time of the accident.

Claimant had also offered the evidence of the subsequent remedial measure in order to prove ownership and control of the weather mats by the Department. As stated before, evidence of subsequent remedial measures is admissible if offered to show something besides proof of negligence. (*McLaughlin v. Rush Presbyterian Memorial Hospital* (1979), 68 Ill. App. 3d 546, 386 N.E.2d 334.) Although proof of improvements subsequent to injury may not be made for the purpose of proof of negligence, such proof is admissible to prove ownership of the instrumentality which caused injury. (*Kellens v. Schiele* (1938), 297 Ill. App. 3d 388, 17 N.E.2d 604.) Other Illinois courts have expressed similar sentiments in stating that, although proof of subsequent remedial measures may not be admissible for the purpose of proof of negligence, it

may be used for the purpose of showing who had control of the premises on which the injury occurred, when control is an issue. (*Seipp v. CTA* (1973), 12 Ill. App. 3d 852, 299 N.E.2d 330; *Kuhn v. General Parking Corp.* (1981), 98 Ill. App. 3d 570, 424 N.E.2d 941.) The subsequent remedial measures taken by the Department in replacing the mat before the entranceway door and placing "wet floor" signs at the entrance after Patricia Kipping's slip and fall undoubtedly proves that the mats were in the control of the Department and that it was the responsibility of the Department to control the conditions of the entranceway of the building.

The reliability of the testimony given by Dr. Crisman in her deposition has also come into question in this case. Dr. Crisman testified that she did not remember telling Patricia Kipping that the mat in the entranceway was out of place and that the floor was wet. With all due respect to Dr. Crisman, it had been a long time between the date of the accident and the date of her deposition, nearly six years; but the evidence of the taped phone conversation between her and Patricia Kipping in which she told Patricia Kipping that the Department had moved the mats over so visitors could not bypass them and put a wet floor sign out puts the reliability and accuracy of Dr. Crisman's testimony in question. This Court believes that the taped phone call in essence impeaches the testimony Dr. Crisman gave as to the conditions of the entranceway on the morning of September 21, 1992. Therefore, this Court has adopted the fact pattern expressed by the Claimant in her claim which is corroborated by the recorded statements made by Dr. Crisman in her phone call to Patricia Kipping which was found to be admissible evidence by the Court in this matter.

Also in question in this case was an objection made by the Claimant to a question posed by Respondent's attorney

and answered by Dr. Kreigshauser during the deposition of Dr. Kreigshauser. Claimant asked the Court to strike lines 15 to 20 on page 29 of Dr. Kreigshauser's deposition which states the following:

"Q: Is it possible that the condition existed prior to the fall and was, I guess, rendered symptomatic by the fall?

A: Yes."

Claimant objected to this exchange stating that it was based on mere "possibilities" and was not based on a "reasonable degree of medical certainty." In Illinois, an expert's opinion cannot be based on conjecture or guess and a medical expert's opinion must be based on a reasonable degree of medical certainty. (*Marshall v. Osborn* (1991), 213 Ill. App. 3d 134, 571 N.E.2d 492; *Collins by Collins v. Straka* (1987), 164 Ill. App. 3d 355, 517 N.E.2d 1147; Federal Rules of Evidence, Rules 702, 703, 705.) However, Illinois courts have also held that, although an expert may not guess, conjecture or surmise as to a possible cause of an injury, she can testify in terms of possibilities or probabilities as long as her opinion is based on a reasonable degree of medical certainty. (*Dupree on Behalf of Estate of Hunter v. Cook County* (1997), 287 Ill. App. 3d 222, 677 N.E.2d 1303.) So, it is permissible for an expert to testify concerning the expert's opinion in terms of possibilities or probabilities as long as it is grounded in a reasonable degree of medical certainty. Although Dr. Kreigshauser's answer to the question posed above seems to run dangerously close to mere speculation and probabilities, it does contain a reasonable degree of medical certainty. When looking at the injury and the problems complained of by Patricia Kipping, Dr. Kreigshauser, in his expert opinion based on a reasonable degree of medical certainty, believed there could have been a possibility that the injury was sustained prior to Claimant's fall at the Department. Dr. Kreigshauser is not stating in his answer that it is likely

that the discomfort complained of was caused by a prior accident, or even that he believes it was; he merely stated that it was medically possible that Patricia Kipping's injury to her knee could have originated from a prior injury. Therefore, lines 15 to 20 of page 29 of Dr. Kreigshauser's deposition will remain a part of the record in this case.

However, it should be noted that elsewhere in his deposition Dr. Kreigshauser strongly asserts that the cause of Patricia Kipping's injury was her fall on September 21, 1992. Page 14 of Dr. Kreigshauser's deposition states:

"Q: And, Doctor, do you have an opinion as to whether the condition that you've referred to in her knee and which you treated her for was caused by the September 21, 1992 incident related in the history?

A: Yes. Based on the patient's history given to me of no problems with the knee prior to that injury, the type of injury she described is consistent with the type of injury found in her knee joint. I would say that the injury was a result of that fall on September 21, 1992."

So, although there is a medical possibility of the injury having a different source than the September 21, 1992, fall, this Court is persuaded by the expert opinion of Dr. Kreigshauser that the cause of Patricia Kipping's injuries was most likely, and almost certainly, her September 21, 1922, slip and fall at the Department.

We now move on to weigh the merits of this case. This Court has held that the State owes a duty to its invitees to use reasonable care in maintaining its buildings. (*Steger v. State* (1993), 46 Ill. Ct. Cl. 262, 266.) However, this Court has also held that the State is not an insurer of the safety of persons visiting its buildings. (*Bahl v. State* (1997), 49 Ill. Ct. Cl. 120, 123.) Invitees assume all normal, obvious or ordinary risks attendant to use of the premises. (*Sanders v. Board of Governors of State Colleges and Universities* (1995), 48 Ill. Ct. Cl. 177, 179.) In

order for a Claimant to recover, there must be evidence of the State's negligent design, construction or maintenance of the area in question. (*Id.* at 179.) However, this alone does not allow the Claimant to recover. Not only must there be evidence of the State's negligence, but there must also be a showing of actual or constructive notice of a dangerous condition and a failure by the State to remedy the condition effectively and efficiently. (*Carlson v. Board of Regents* (1994), 47 Ill. Ct. Cl. 171, 173.) Therefore, a Claimant bears the burden of establishing by a preponderance of the evidence that the State breached its duty of reasonable care, that the breach proximately caused the injuries and that the State had actual or constructive notice of the dangerous condition in order to recover.

In this case before the Court, the Respondent has failed to use reasonable care in properly maintaining the entranceway of its building in order to keep it reasonably safe for invitees entering the building. The Department recognized its obligation to keep invitees reasonably safe upon entering the building by purchasing and placing heavy weather mats at the entranceway of the building and periodically checking them to make sure they were properly placed in the entranceway. The Department breached its duty to keep the entranceway reasonably safe on the morning of September 21, 1992, by not properly placing the weather mat before the right-hand door of the entranceway to the building as was the policy and normal practice of the facility, thereby creating the dangerous condition of a wet tile floor which directly caused the injuries to Patricia Kipping. In a related case, where snow and water accumulation in a waiting room of a State office caused an invitee to slip and injure her knee, this Court held the State liable because the State has a duty to remedy the situation in order to make the premises safe

since due to the accumulation created, it was reasonably foreseeable that someone could slip and fall. (*Owen v. State* (1989), 41 Ill. Ct. Cl. 109, 111.) Asking the Department to make sure there was a mat placed before its lone entrance door was certainly a reasonable measure to keep invitees reasonably safe from foreseeable dangerous conditions and did not constitute an overly burdensome duty upon the Department turning it into an insurer of the safety of persons visiting its building.

There is also evidence in this case that the State had notice of a dangerous condition on its premises and failed to make an effort to remedy the dangerous condition. It had been raining on the morning of September 21, 1992, and Department employees should have been reasonably aware of possibly dangerous conditions in the entranceway due to the tracking in of water by visitors. Because of this, the State had constructive notice, if not actual notice, of the potentially dangerous conditions in its entranceway. Yet, at no time prior to Patricia Kipping's fall had the Department taken any steps to remedy the dangerous condition by checking the conditions of the entranceway and properly placing the weather mat so as to be useful for its intended purpose of keeping the entranceway reasonably dry and safe for all persons entering the building. In an analogous case, a visitor was injured when she slipped and fell on a wet spot on the floor due to rain that had been tracked in by visitors of a State building. This Court held that the heavy rainfall had given the State sufficient notice and it should have made some effort to keep its floors reasonably dry under the circumstances. (*Hambry v. State* (1976), 31 Ill. Ct. Cl. 487, 489.) In another related case where an invitee of the Department of Motor Vehicles slipped on a wet spot on the tile floor of the building, the State was found liable

for the injuries sustained because the State had constructive, if not actual, notice of the dangerous condition of standing water, due to the rain that day, yet no attempt was made to correct the condition. (*Smith v. State* (1989), 41 Ill. Ct. Cl. 42, 43.) Our case closely parallels the fact patterns of the above cases; therefore, we hold that the State failed to take reasonable measures to remedy a dangerous condition in its entranceway of which it had constructive, if not actual, notice due to rainfall on the morning of September 21, 1992.

In conclusion, the State owes a duty of reasonable care in maintaining its premises for the safety of its invitees which the Department breached by not having its heavy weather mat properly located behind the entranceway door to the building. The Department had constructive, if not actual, notice of the potentially dangerous condition at the entranceway due to the rain that fell throughout the morning hours on September 21, 1992, yet it did nothing to check upon, and remedy, the potentially dangerous condition that was present. The injuries sustained by Patricia Kipping's knee were directly and proximately caused by the negligence of the State, and this Court finds the State liable for said injuries.

For the foregoing reasons, the Court awards Claimant the sum of $12,000 in full and complete satisfaction of this claim.