(No. 89-CC-0022-

NICOLETTE M. STEGER, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 15, 1993.*

BRADY, MCQUEEN, MARTIN, COLLINS & JENSEN (LOREN S. GOLDEN, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (ARLA ROSEN-THAL and ROBERT J. SKLAMBERG, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

On May 14, 1988, the Claimant, Claimant's ex-husband, Robert Steger, and Claimant's children went to the Bone Center of the Braden Auditorium at Illinois State University to watch Claimant's son, Patrick, receive an award at a young writers/authors ceremony. Patrick was to receive an award for something he had written. There were several hundred people at the ceremony. The awardees were third and fourth grade children. The doors to the auditorium were opened at 1:00 p.m. and the Steger family entered at that time. Robert Steger, the father, noticed a slippery substance on the floor at the back wall near the door of the auditorium and saw a small child slip on that substance. Mr. Steger was the only one who saw this slip and he told no one about it.

Claimant and the others in their party went to their seats and sat down. About 15 minutes later, Mrs. Steger and her daughter went to get a program and walked to the back of the auditorium. Claimant walked behind her daughter. Claimant then slipped on some vomit on the floor and injured her right knee. This resulted in a torn ligament. Dr. Carson, Claimant's expert witness, indicated there would be some permanence to the injury. Claimant was on crutches about a month. The substance slipped on appeared to be vomit.

Three student managers were present in their office adjacent to the ballroom at the time of the accident. Angela Dahl testified by deposition and Jill Jacobs testified in person. Angela Dahl was advised of the spill from the woman in the lobby shop. Jill Jacobs called the building service worker and Angela walked to the ballroom to check on the spill. Angela believes it was about five minutes from the time she was told of the spill until she got down to the area of the spill. The janitor was just arriving to clean up the spill when she arrived. Jill Jacobs testified that her job included supervising building service workers and making sure rooms were properly set up and cleaned. She testified that she received notice at 1:15 p.m. that someone had thrown up. She wrote the time down. An unknown person reported it to the gift store, whose personnel radioed her. She testified that another student manager was on duty since two events were taking place in the building. She testified she was in charge of two buildings. After receiving notice of a "spill," she radioed a janitor to clean it up. The janitor cleaned it up within three or four minutes. She testified her room was 30 seconds from the room in which the "spill" occurred. She further testified that she then went to see the spill and saw Claimant on the floor and offered assistance. A janitor was already there cleaning the vomit from the floor. She estimated it took two minutes for the janitor to get to the "spill."

This student manager also testified that Claimant told her her knee went out. She stated that Claimant wanted to stay until the event was over. The manager said that if Claimant's husband went to the office, he could get a wheelchair for transport to the nurse's station or to go home in her car. She further testified that there was an individual who was the auditorium manager in charge of

ushers, staff and nurses. He was not in charge of the ball-room that day and his whereabouts were unknown.

The janitor then testified that it took him two to three minutes to get to the spill and only a few minutes to clean up the spill. He testified that the spill was about two feet long. A university nurse testified that she offered aid to Claimant at the scene. She also offered Claimant a wheelchair. Later on, she observed Claimant standing in the doorway of the first aid room. The nurse was surprised since she was going to get her a wheelchair. The nurse examined her and saw some swelling and discoloration with good movement to her ankle. Claimant told her that her knee had popped out before. Claimant declined to get x-rayed as she preferred to see her private doctor. Claimant subsequently underwent arthroscopic surgery on her knee.

Claimant's doctor's deposition shows that her prior knee injury had some part of but not most of what happened to cause the ligament surgery which resulted from the fall. The surgery she had in regard to this injury was for a torn ligament and torn cartilage. Claimant suffered pain, she could put no weight on her limb for 10 days, and she suffered discomfort for some time. Claimant also had physical therapy for six weeks. She lost two months from work. Claimant's medical bills and lost wages totaled $10,542.09. A substantial portion of the wage loss was covered by disability insurance leaving the total medical and wage loss at $7,982.09.

The evidence is that someone vomited or spilled something that looked like vomit in the university ballroom either shortly before or at about the time the doors were opened at 1:00 p.m. The evidence is that Claimant slipped on the "spill" between 1:00 p.m. and 1:15 p.m. The evidence further shows that upon notification by an

unknown individual, Respondent had it cleaned up in a few minutes. Claimant argues that 15 minutes (or more) is too long a response time to a dangerous situation. Respondent says there was no constructive or actual notice until 15 minutes after the spill occurred and that a response of three to five minutes afterwards is reasonable.

The State of Illinois is not an insurer of the safety of persons visiting its buildings but rather such visitors are owed a duty of reasonable care in maintaining the premises. Claimant was an invitee to whom a duty of reasonable care for her safety was owed by Respondent to Claimant. (*Berger v. Board of Trustees* (1988), 40 Ill. Ct. Cl. 120.) The Claimant has the burden of proving by a preponderance of the evidence that Respondent breached its duty of care, that Claimant was free of contributory negligence in line with our decisions on comparative negligence, that the negligence of Respondent proximately caused the injury, and that the State had actual or constructive notice of the dangerous condition from all the circumstances in the case. *Berger, supra,* at 124.

The State has no duty to clear away every possible source of injury. A legal duty requires more than the possibility of occurrence and the State, like any other person, is charged with a duty only when harm is legally foreseeable. The issues of foreseeability and duty involve many factors, including the magnitude of the risk, the burden of requiring the State to guard against the risk, and the consequences of placing this burden on the State. *Wilson v. State* (1989), 41 Ill. Ct. Cl. 50.

In the case before us we find that the possibility of slippery foreign substances being on the floor of this building with hundreds of people, including children being present, was clearly foreseeable. The burden of guarding against this risk was minimal as employees were

already on hand for this purpose. Unfortunately they were sitting in a room 30 seconds away as people were walking into the ballroom to find their seats.

We find this to be a very close case. In almost all other circumstances, three to four minutes of actual notice would not be sufficient to charge the State with a duty. However, in this case, the Claimant has proven by a preponderance of the evidence that the State had actual notice of a dangerous situation. The negligence occurred when one of the student managers, only 30 seconds away, did not immediately go to the area of danger and warn the Claimant and others of the danger. The testimony of Claimant and her doctor also satisfies the court that a causal connection exists for the injuries suffered by Claimant. Claimant was free from contributory negligence in that the substance was difficult to see. We note that the janitor had trouble finding the slippery substance on the floor.

We have reviewed the damages and believe that an award of $25,000 fairly compensates the Claimant for her past and future damages. It is therefore ordered that an award of $25,000 is hereby entered in favor of Claimant, said award being in full and complete satisfaction of Claimant's complaint.