(No. 89-CC-1163—

JACE RAPP, Deceased, by his father and next friend, ALFRED WILLIAMS, SR., ALFRED WILLIAMS, SR., Individually, ALFRED WILLIAMS, JR., by his father and next friend, ALFRED WILLIAMS, SR., and CYNTHIA WILLIAMS, Individually, Claimants, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 15, 1998.*
*Order filed February 11, 1999.*

DAVID K. KREMIN & ASSOC. (DAVID K. KREMIN, of counsel), for Claimants.

JIM RYAN, Attorney General (TOMAS A. RAMIREZ, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

This cause comes before the Court on Respondent's motion to dismiss, Claimants' motion for extension of time and Respondent's motion to stay discovery. The issues have been thoroughly briefed by the parties and the Court has heard oral arguments.

### Facts

The events before the Court started when a call was placed to the Department of Children & Family Services hotline indicating that Jace Rapp, a four-month-old child, was abandoned and neglected. One of the Department's child welfare investigators, Mr. VanHoose, took temporary protective custody of Jace Rapp. The report made to the hotline was determined to be an indicated report by Mr. VanHoose. An indicated report means that a report was made under section 5/3 of the Abused and Neglected Child Reporting Act (325 ILCS 5/3), and the subsequent investigation determined that credible evidence of alleged abuse or neglect existed as to that child.

On October 5, 1987, Claimants' decedent, Jace Rapp, was taken to Michael Reese Hospital by a teenager. Jace Rapp's mother had turned over the child to the teenager. The decedent was diagnosed as requiring emergency surgery. This surgery was not performed because

the teenager who had been caring for Jace Rapp did not have authority to consent to the surgery and was informed that the hospital would require a parental consent. In response, DCFS investigator, VanHoose, went to the family that was caring for Jace Rapp and removed the child from their possession.

On November 20, 1987, a juvenile court hearing was held. At the court hearing, Jace Rapp was returned to his mother. The Cook County Circuit Court continued the case under supervision and entered conditions of protection for the mother in conformance with paragraph 705—5 of the Juvenile Court Act.

The Circuit Court did not take custody and did not grant guardianship of the child to DCFS. The Court did set conditions of protection with respect to the mother's responsibilities as follows:

(a) Mother shall cooperate with all reasonable requests of DCFS or its assigns;

(b) Mother shall provide all care necessary for the well-being of the minors;

(c) Mother shall insure that minors are enrolled and attend a medical clinic directed by DCFS;

(d) Mother shall obtain adequate housing;

(e) Mother shall notify DCFS of any change in address;

(f) Mother shall make minors available to GAL prior to the determination of this order;

(g) Mother shall not leave minors without adequate adult supervision;

(h) Mother shall attend parenting skill classes per DCFS request; and

(i) Mother shall obtain all necessary medical treatment as indicated by the medical clinic.

The mother apparently failed to comply with the order and on December 18, 1987, Jace Rapp died.

The Claimants have brought this wrongful death action alleging that the Illinois Department of Children & Family Services was negligent in that it failed to provide adequate care, supervision, custody and medical treatment to Claimants' decedent, Jace Rapp. The Claimants have alleged that at the time of Claimants' decedent's death, he was in the care, supervision and custody of the Department. The Respondent argues that the complaint should be dismissed as the Department breached no duty to Claimants' decedent. The Respondent's position is that DCFS cannot be held liable for Claimants' decedent's death as DCFS did not have custodial or guardianship responsibilities for the minor at the time of his death.

The Department's child welfare investigator, Mr. VanHoose, took only temporary protective custody of the decedent after a call was made on September 14, 1987, to the DCFS hotline alleging that the child was neglected. The subsequent required report made to the hotline was "indicated" for inadequate supervision, in conformance with the Abused and Neglected Child Report Act (325 ILCS 5, *et seq.*), and the Department's administrative rules and procedures.

As a result of a temporary custody hearing on November 20, 1987, the Claimants' decedent was placed in the home of the child's maternal grandmother, Johnnie Mae Rapp, who resided in the same building as the child's mother, Laretha Rapp. The Cook County Circuit Court did not adjudicate the matter and did not grant DCFS custodial or guardianship responsibilities with respect to

the minor, but continued the cases of *In the Interest of Issac Rapp*, No. 87J-15768, and *In the Interest of Jason Rapp* (Claimants' decedent), No. 87J-15769 under supervision in accordance with section 704—7 of the Juvenile Court Act and entered the aforesaid conditions of protection by the mother in conformance with section 705—5 of the Juvenile Court Act.

### The Parties' Positions

The State argues that in order for Claimants to recover, Claimants must prove by a preponderance of the evidence that the State was negligent and that such negligence was the proximate cause of the decedent's death. To establish negligence, Claimants must prove that the Respondent owed a duty of care, a breach of that duty, and an injury proximately caused by the breach. *Steger v. State* (1993), 46 Ill. Ct. Cl. 262.

It is Respondent's position that DCFS breached no duty to Claimants. Respondent argues that DCFS cannot be held liable for Claimants' decedent's death as DCFS did not have custodial or guardianship responsibilities for the minor at the time of his death. At the temporary custody hearing, the Circuit Court never adjudicated custody of the decedent. The Court continued the case under supervision pursuant to the Juvenile Court Act. Respondent asserts the Circuit Court's order did not create a duty by DCFS to the decedent nor does it establish liability.

Claimants argue that even if custody or guardianship was not granted to DCFS, that DCFS had a duty to assist the Circuit Court during all stages of the Court proceeding, to protect the best interests of the child, and had a duty to offer protective services in order to prevent any further harm to the child. Claimants cite statutory authority in section 405/2—3 of the Juvenile Court Act of 1987

(705 ILCS 405/2—3) which defines a neglected minor as any minor under 18 years of age whose parent does not provide the proper or necessary support or care for a minor's well-being, including adequate food, clothing and shelter, or who is abandoned by his parent. Further, upon receiving reports of neglect, pursuant to section 5/2 of the Abused and Neglected Child Reporting Act (325 ILCS 5/2), the Illinois Department of Children & Family Services shall protect the best interests of the child and offer protective services in order to prevent any further harm to the child. Pursuant to section 7.4(2) of the Act (325 ILCS 5/7.4(2)), if it appears that the immediate safety or well-being of a child is endangered, the Child Protective Services Unit shall commence an investigation immediately. In all other cases, an investigation shall be commenced within 24 hours of receipt of the report. Upon receipt of a report, the Child Protective Service Unit shall make an initial investigation and an initial determination as to whether the report is a good faith indication of alleged child abuse or neglect. Pursuant to section 5/7.4(3) of the Act (325 ILCS 5/7.4(3)), if the Unit determines the report is a good faith indication of alleged child abuse or neglect, then a formal investigation shall commence. This formal investigation shall include: direct contact with the subject or subjects of the report as soon as possible after the report is received; an evaluation of the environment of the child named in the report; a determination of the risk to the child if the child continues to remain in the existing environment, as well as a determination of the nature, extent and cause of any condition enumerated in such report; the name, age and condition of other children in the environment; and an evaluation as to whether there would be an immediate and urgent necessity to remove the children from the environment if appropriate family preservation services were provided.

Claimants also point out that pursuant to section 5/8.3 of the Act (325 ILCS 5/8.3), "The Department shall assist a circuit court during all stages of the court proceeding * * * by providing full, complete and accurate information to the court * * *."

Mr. VanHoose was the child welfare investigator assigned to determine if the report of neglect was made in good faith concerning Claimants' decedent. Mr. VanHoose determined that this was an "indicated report" pursuant to section 7.4(3) of the Act (325 ILCS 5/7.4(3)), and a formal investigation commenced. The formal investigation was to include: direct contact with Jace Rapp as soon as possible after the report was made; an evaluation of the environment of Jace Rapp; a determination of the risk to Jace Rapp if left abandoned by his mother; a determination as to the nature, extent and cause of the neglect of Jace Rapp; the name, age and condition of other children in the same environment as Jace Rapp; and an evaluation as to whether there would be an immediate and urgent necessity to remove Jace Rapp from that environment.

Mr. VanHoose, in his deposition, has admitted that he failed to follow the policy and procedure of DCFS, admitted that in this case a protective order should have been entered, and custody should have been given to the father. Mr. VanHoose further stated that the policy and procedure of DCFS was to place the child in protective custody if any one of the following four conditions existed: the child was in a life-threatening situation, or was in immediate danger, or was in poor health condition, or was abandoned by his mother. In his deposition testimony, Mr. VanHoose stated that the mother's conduct in this case met all four factors which would indicate a request for immediate protective custody. He further testified that he failed to advise the State's Attorney of this information

and failed to ask for protective custody, all contrary to the policy and procedure of DCFS. However, Mr. VanHoose stated in his deposition that he testified under oath at the hearing and told the judge and State's Attorney everything that was in his report. Mr. VanHoose's report indicated that Mr. VanHoose had learned the mother, Laretha Rapp, had given the baby to Rochetta Tyler to care for until the child became two years old. However, there was nothing in writing in that regard and he also learned that Laretha Rapp had not provided adequate care when she had the child and had not been living in adequate housing. The investigative report also indicated the Tylers had been unable to contact Laretha Rapp. The child appeared to be normal and had been entered into a milk, cheese and dairy product program. The maternal grandmother, Johnnie Rapp, did not know the whereabouts of Laretha Rapp. Mr. VanHoose also learned that Laretha's other son had been left with family members. Laretha Rapp's other son had no signs of abuse or neglect, as he lived with Laretha's sister. Mr. VanHoose subsequently met with Laretha who told him she did not think she was neglectful of the children. She also claimed to be in contact with her family members which was in conflict with the family members' statements. The mother did admit she did not leave money for the people taking care of her children.

The report also indicated that the Tylers took Jace to the hospital where a hernia requiring surgical intervention was diagnosed. This required an involved caretaker.

Mr. VanHoose's deposition testimony indicates that he testified in juvenile court under oath as to everything that occurred as stated in his report. The State, the mother and grandmother were all represented in the juvenile proceeding. The juvenile court's order of November 20, 1987, indicates a guardian ad litem for the child.

Claimants seek additional depositions of DCFS workers and Respondent objects to these depositions. Respondent seeks a stay of discovery until the motion to dismiss is determined. Claimants seek an additional five depositions of present and former DCFS employees to determine if negligence exists. This case has been pending for more than nine years.

### Analysis

The Department of Children and Family Services was created by the legislature to protect and promote the welfare of the children of Illinois. (20 ILCS 505/1 *et seq*.) The legislature vested DCFS with certain investigative powers to help carry out their responsibilities. The agency employs child protective investigators. (20 ILCS 505/21.) The role of DCFS investigators is to inquire into abuse and neglect charges, and investigate charges of abuse where indicated. These investigators, however, are not police officers and do not have powers of arrest. *People v. Hagar* (1987), 160 Ill. App. 3d 370.

The Illinois Department of Children and Family Services, shall, upon receiving reports made under the Act, protect the best interests of the child, offer protective services in order to prevent any further harm to the child and to other children in the family, stabilize the home environment, and preserve family life wherever possible. (325 ILCS 5/2.) Additionally, section 9 of the same Act states:

> "Any person, institution or agency, under this Act, participating in good faith in the making of a report or referral, or in the investigation of such a report or referral or in the taking of photographs and x-rays or in the retaining a child in temporary protective custody * * * shall have immunity from any liability, civil, criminal or that otherwise might result by reason of such actions. For the purpose of any proceedings, civil or criminal, the good faith of any persons required to report or refer, or permitted to report, cases of suspected child abuse or neglect or permitted to refer individuals under this Act * * * shall be presumed."

In the present case, it is undisputed that at the time of decedent's death, the Department of Children and Family Services did not have custody or guardianship of the decedent. The child's mother, pursuant to the Court's orders, had custodial duties with specific responsibilities as ordered by the Court. Therefore, no duty to Claimants' decedent can be placed on DCFS predicated on guardianship or custody status.

Claimants argue that Respondent had a duty to investigate child abuse and make its report to the Court. Claimants argue the breach of the duty was when the investigator failed to request guardianship and custody status at the Court hearing. The uncontradicted facts before this Court are that the investigator investigated and made a report. He further testified at the Court hearing to everything that was in his report. There are no allegations of malice on the part of the investigator. (*Lehmans v. State* (1991), 44 Ill. Ct. Cl. 178.) The Circuit Court judge entered the order continuing the case under supervision and it was the child's mother's actions or inactions that led to the death of her child.

The facts further show that the mother had left her other child with family members and there were no signs of abuse. The mother had left Claimants' decedent with a family and not left Jace Rapp out on the streets. With the legislative purpose of trying to keep families together, with this being the first complaint of neglect against the mother, with the Circuit Court having heard the complete testimony of the investigator, we cannot say, as a matter of law, that it was inappropriate to return Jace Rapp to his mother under the nine conditions of supervision. There is no evidence before the Court that the State's Attorney or GAL disagreed. If the mother had followed the Court order as she was ordered to do, it is unlikely this case would

be before the Court. Because the legislature has made a priority of keeping families together, there is often a fine line between taking guardianship and returning a child to his family under supervision orders. In this case, hindsight proves it was not a good decision. At the time of the hearing, however, the case worker, State's Attorney, GAL and judge were responsible for the decision. Claimants want to treat the decision as solely the prerogative of the Respondent, which is simply incorrect.

If the investigator had not testified at the hearing, we might give more weight to Claimants' argument. However, the fact is that the investigator testified to the facts in his report. Having heard those facts, the State's Attorney presented and the judge entered the order continuing the case under supervision with nine conditions. There is no basis for this Court to review that decision; indeed, we lack jurisdiction to engage in such reviews. Nor will we engage in a review of the position or advocacy of the State's Attorney. Our consideration is much more limited.

### Conclusion

Having considered at length the totality of the facts and circumstances presented to this Court, we find the investigation and report to have been made in good faith. The Respondent, therefore, carried out its statutory duties and had no further special duties to the Claimants' decedent. (*Peters v. State* (1995), 47 Ill. Ct. Cl. 326.) When the child was returned to his mother, the mother bore the legal, as well as the natural, duty to protect and care for the child. (*MidAmerica Trust Co. v. Moffatt* (1987), 158 Ill. App. 3d 375; *Asbury v. State* (1998), 50 Ill. Ct. Cl. 184. Beyond the natural and legal duty of the mother to care for her child generally, she was under the explicit nine-point Court order to provide care for the decedent.

The Circuit Court, after hearing the evidence in the investigator's report, was in the best position to determine if the child should be returned to his mother, and so decided. When the supervision order was entered, the Circuit Court restored the mother to her duty to care and provide for the child. The Respondent had neither guardianship nor custody of the child, nor any duties of care imposed by Court order, and thus bore no such duty to the child. Because the Respondent had no duty toward the child, the Respondent could not be negligent as a matter of law.

## Order

In light of our decision herein on the merits of the motion to dismiss, we must deny Claimants' motion for an extension of time. The Respondent's motion to stay discovery is rendered moot by our decision.

Based on the foregoing, it is the order of the Court that Respondent's motion to dismiss is granted and this cause is dismissed with prejudice.

## ORDER

FREDERICK, J.

This cause comes before the Court on Claimants' motion for reconsideration and Claimants' supplement to Claimants' motion for reconsideration, and the Court having reviewed the pleadings, the Court file, and the order of October 15, 1998, and the Court being fully advised in the premises, wherefore, the Court finds:

1. That the transcript provided by Claimants supports the Court's order of October 15, 1998.

2. That Assistant Guardian *ad litem*, Ms. Jane Burwell, was present at the hearing on November 20, 1987, for the minor Respondent.

3. That Assistant Public Defender, Mr. Paul Kratchman, was present for the father.

4. That Assistant State's Attorney, Ms. Kathryn Gallenas, was present for the People of the State of Illinois.

5. That Attorney E. Duke McNeil was present for the mother.

6. That McHenry VanHoose testified to give a factual basis for the proposed order.

7. The record indicates the Assistant State's Attorney discussed the case with the attorney and guardian *ad litem.*

8. That the testimony of McHenry VanHoose on November 20, 1997, broached the following subjects:

(a) That the child had been left with friends by the mother in August;

(b) The friends had been unable to contact the mother;

(c) That the mother had not provided anything for the child;

(d) The mother did not indicate when she would be picking up the child;

(e) The grandmother did not know where the mother could be reached;

(f) The grandmother was keeping the mother's other child;

(g) The grandmother did not know when the mother would be back to pick up that child;

(h) That no case plan had been set up for the child;

(i) That the child had been taken to the hospital because he was having trouble;

(j) The child might need an operation but the family could not contact the mother;

(k) They needed the mother's consent for the surgery.

9. The mother's attorney advised the Court that the mother would make the child available and perform all of the conditions of the order.

10. That the mother's attorney advised the Court that the mother had perused the agreement and he had explained it to her.

11. The judge asked the mother if she understood the order and she said yes.

12. That this Court will not second guess the Circuit Court of Cook County.

13. That the investigator did testify at the hearing.

14. That the Court's order of October 15, 1998, was the correct order.

Therefore, it is ordered that Claimant's motion for reconsideration and supplement thereto are denied.